RESPONSIBLE CITIZENS IN OPPOSITION TO THE FLOOD PLAIN OR-
DINANCE, ET AL. v. THE CITY OF ASHEVILLE, A MUNICIPAL CORPORATION

No. 545PA82

(Filed 3 May 1983)

1. **Municipal Corporations § 30.10— municipal flood plain ordinance—valid exercise of police power**

   A city ordinance setting forth land-use regulations on property designated a flood hazard district and requiring that new construction and substantial improvements made to properties in the flood hazard district be built so as to prevent or minimize flood damage constituted a valid exercise of the police power and did not effect a "taking" of property without just compensation in violation of the N.C. Constitution or the U.S. Constitution. Article I, § 19 of the N.C. Constitution; Fifth Amendment to the U.S. Constitution.

2. **Municipal Corporations § 30.10— municipal flood plain ordinance—no violation of equal protection**

   A city ordinance setting forth land-use regulations on property designated a flood hazard district and requiring that new construction and substantial improvements made to properties in the flood hazard district be built so as to prevent or minimize flood damage did not violate the equal protection guarantees under either the N.C. Constitution or the U.S. Constitution, since the classification created by the ordinance is reasonable, and the ordinance benefits owners of property within the flood hazard area not only directly but indirectly as well by making available federal flood insurance and financial assistance for acquisition and construction purposes.

3. **Evidence § 45— evidence of value by property owner—exclusion as harmless error**

   In an action to determine the validity of a city flood plain ordinance, the trial court erred in excluding the testimony of three property owners concerning the damaging effect of the ordinance on the value of their property, since a property owner is competent to testify as to the value of his own property, even though his knowledge on the subject would not qualify him as a witness were he not the owner, unless it affirmatively appears that the owner does not know the value. However, such error was not prejudicial since the trial court found from other evidence that the ordinance seriously depreciated the value of properties in the area, and since a mere diminution in value was not sufficient to invalidate the ordinance.

   Justices MARTIN and FRYE took no part in the consideration or decision of this case.

PLAINTIFFS appeal from a judgment of *Burroughs, J.,* rendered at the 19 April 1982 civil session of Superior Court, BUNCOMBE County, determining that plaintiffs were not entitled to relief on their claims that the City of Asheville's land-use or-

dinance was unconstitutional. On 3 November 1982 we allowed plaintiffs' petition for discretionary review to hear the matter prior to determination by the Court of Appeals.

*Jack W. Westall, Jr., Attorney for plaintiff-appellants.*

*Bennett, Kelly & Cagle, P.A., by Harold K. Bennett, Attorney for defendant-appellee.*

MEYER, Justice.

The primary issue here is whether a city ordinance setting forth land-use regulations on property designated a flood hazard area constitutes an unlawful exercise of the police power because it effects a "taking" of the property without just compensation in violation of the North Carolina Constitution or the United States Constitution. In addition, we determine whether such an ordinance violates the equal protection provisions of the federal and state constitutions because it allegedly benefits one class of citizens at the expense of another class. For the reasons set forth below, we hold that the ordinance in question is constitutionally sound.

I.

Plaintiffs are owners of commercial real property located in "flood hazard districts" in Asheville, North Carolina. Plaintiffs brought this class action against the City of Asheville claiming that the effect of the city's flood plain ordinance, which establishes land-use regulations for plaintiffs' properties, "substantially deprive[s]" them of "the right to reasonable use of their property and to cause the value of the property to depreciate to a fraction" of its value. In essence, then, plaintiffs challenge the enactment of the flood plain ordinance as an invalid exercise of the police power because, they contend, it effects a violation of their constitutional rights under the federal and state[1]

---

1. In *Long v. City of Charlotte*, 306 N.C. 187, 195-96, 293 S.E. 2d 101, 107-08 (1982), we stated: "While North Carolina does not have an express constitutional provision against the 'taking' or 'damaging' of private property for public use without payment of just compensation, this Court has allowed recovery for a taking on constitutional as well as common law principles. *Stoebuck, supra,* 71 Dick. L. Rev. 207, 226 n. 102. We recognize the fundamental right to just compensation as so grounded in natural law and justice that it is part of the fundamental law of this

constitutions to just compensation for the "taking" of private property for public use. In addition, plaintiffs claim that the flood plain ordinance violates the equal protection provisions of the federal and state constitutions. Specifically, they claim the ordinance "imposes severe restrictions on the property of some citizens for the purpose of allowing other property owners in the City of Asheville to receive the benefit of numerous Federal financial assistance programs."

The provisions of the ordinance which plaintiffs attack require, in general, that new construction and substantial improvements made to properties in the flood hazard districts be built so as to prevent or minimize flood damage. Specifically, plaintiffs challenge Article 6, Section B; Article 7, Section B; Article 8, Section B, Subsections 1-5; and Article 10, Section B, of the ordinance.

Article 6, Section B, provides:

REQUIREMENTS .

(1) All new construction and substantial improvements shall be anchored to prevent flotation, collapse or lateral movement of the structure.

(2) All new construction and substantial improvements shall be constructed with materials and utility equipment reasonably resistant to flood damage as defined in N.C. Building Code.

(3) All new construction and substantial improvements shall be constructed by methods and practices which reasonably minimize flood damage.

(4) All new and replacement water supply systems, either private or public, shall be designed and installed to minimize, to the greatest extent practicable, infiltration of flood waters into the system.

State, and imposes upon a governmental agency taking private property for public use a correlative duty to make just compensation to the owner of the property taken. This principle is considered in North Carolina as an integral part of 'the law of the land' within the meaning of Article I, Section 19 of our State Constitution."

(5) All new and replacement sanitary sewerage systems, either private or public, shall be designed and installed to minimize, to the greatest extent practicable, infiltration of flood waters into the systems and discharge from the systems into the flood waters.

(6) On-site waste disposal systems shall be located or constructed to avoid impairment of them or contamination from them during flooding.

(7) Any alteration, repair, reconstruction or improvements to a structure, on which the start of construction was begun after the effective date of this Ordinance, shall meet the requirements of "new construction" as contained in this Ordinance.

This article applies to all property in the flood hazard districts. Flood hazard districts are divided into two types, "floodway districts" and "flood fringe districts." Plaintiffs here have property in each type of flood hazard district.

Article 7, Section B, which applies in general to property in floodway districts, provides:

REQUIREMENTS

(1) Within a designated FLOODWAY District, all fill, encroachments, new construction or substantial improvement shall be prohibited, except as otherwise provided herein as a Permitted use or Conditional Use.

(2) The construction, reconstruction or improvement of any portion of a new or existing mobile home park, the expansion of an existing mobile home park, the placement, replacement, location and relocation of a mobile home within a FWD are prohibited.

(3) Residential uses of buildings and lands within the Floodway District are prohibited.

Article 8, Section B, which applies in general to property in flood fringe districts, Subsections 1-5, provides:

REQUIREMENTS

(1) Permits are required for all grading and construction work within a FFD. Applications shall be made pursuant to ARTICLE 4 SECTION C of this Ordinance.

(2) The construction, reconstruction or improvement of any portion of a new or existing mobile home park, the expansion of an existing mobile home park, the placement, replacement, location and relocation of a mobile home within a FFD are prohibited.

(3) New construction or substantial improvement of any residential structure within a FFD shall have the lowest habitable floor (including basement) elevated to at least two feet above the Regulatory Flood Elevation and utilities shall be floodproofed as provided by Article 10 Section A of this Ordinance.

(4) New construction or substantial improvement of any commercial, industrial or other non-residential building shall either have the lowest floor (including basement) elevated to at least one foot above the Regulatory Flood Elevation and utilities shall be floodproofed as provided by Article 10 Section A of this Ordinance or shall be floodproofed up to at least the Regulatory Flood Elevation pursuant to Article 10 Section B of this Ordinance and shall have utilities floodproofed pursuant to Article 10 Section A.

(5) Outside storage of materials of inventories for allowable uses within the Flood Fringe District and not otherwise prohibited by the Ordinance shall be allowed.

Article 10, Section B, provides:

FLOODPROOFING BUILDINGS

New construction or substantial improvements of any commercial, industrial, or other nonresidential structure, together with the attendant utilities, shall be floodproofed in one of the following ways:

(a) Elevation of the lower floor, including basement above the level of the base or regulatory flood elevation at the specific site;

(b) Be floodproofed so that below the base flood level the structure is water tight with walls substantially impermeable to the passage of water, with structural components having the capacity of resisting hydrostatic and hydrodynamic loads and the effects of buoyancy;

(c) An alternative method of floodproofing structures shall be to construct nonresidential buildings in such a manner that water shall be allowed to pass into or through the structure with no substantial risk that the building will thereby be endangered or be susceptible to collapse or substantial damage. (The owners of such structure shall be advised that improvements made under this provision shall receive a specified rating for insurance purposes and that no subsidized insurance will be available for goods, inventories, materials or equipment contained in the building below the base flood elevation.) However, before this method of floodproofing is utilized the proposed use or construction shall be approved by the Board of Adjustment as set forth in Article 4 of this Ordinance.

(d) An acceptable combination of methods (a) - (c).

In all instances, however, a registered professional engineer or architect shall certify that the standards of this subsection are satisfied. Such certification shall be provided to the City as set forth in Article 4. Section C., as contained herein.

Judge Robert M. Burroughs heard the case without a jury. He concluded as a matter of law that enactment of the ordinance was "a valid exercise of police power, and the mere fact that it seriously depreciates the value of properties in said areas does not establish its invalidity." In addition, Judge Burroughs determined that the ordinance did "not substantially deprive the plaintiffs and those similarly situated of the right to reasonable use of their property and does not constitute an unlawful taking by the defendant of property owned by the plaintiffs." Finally, he found that the ordinance did not violate the equal protection provisions of the North Carolina Constitution or the United States Constitution. Plaintiffs appealed. We granted plaintiffs' petition for discretionary review to hear the matter prior to determination by the Court of Appeals.

## II.

### A.

**[1]**  We address first plaintiffs' contention that the ordinance constitutes an invalid exercise of police power because it effects a "taking" of their property in violation of their right to just compensation under the North Carolina Constitution.[2]

In *A-S-P Associates v. City of Raleigh,* 298 N.C. 207, 258 S.E. 2d 444 (1979), Justice Brock succinctly articulated the analysis to be applied in examining due process challenges to governmental regulations of private property claimed to be an invalid exercise of the police power. He wrote:

> Several principles must be borne in mind when considering a due process challenge to governmental regulation of private property on grounds that it is an invalid exercise of the police power. First, is the object of the legislation within the scope of the police power? Second, considering all the surrounding circumstances and particular facts of the case is the means by which the governmental entity has chosen to regulate reasonable?

298 N.C. at 214, 258 S.E. 2d at 448-49 (citations omitted).

In short, then, the court is to engage in an "ends-means" analysis in deciding whether a particular exercise of the police power is legitimate. The court first determines whether the ends sought, *i.e.*, the object of the legislation, is within the scope of the power. The court then determines whether the means chosen to regulate are reasonable. Justice Brock stated that this second inquiry is really a "two-pronged" test. That is, in determining if the means chosen are reasonable the court must answer the following: "(1) Is the statute in its application reasonably necessary to

---

2. In *Department of Transportation v. Harkey,* 308 N.C. 148, 301 S.E. 2d 64 (1983), this Court noted again that " '(t)he question of what constitutes a taking is often interwoven with the question of whether a particular act is an exercise of the police power or of the power of eminent domain.' " The Court also noted that " '(i)f the act is a proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable.' " *Id.*, *quoting* McQuillin, Municipal Corporations, Third Edition, Volume 11, 32.27. Plaintiffs here, in essence, claim that the exercise of the police power is invalid because the interference with the use of their properties is unreasonable: the ordinance effects a "taking" of their property.

promote the accomplishment of a public good and (2) is the interference with the owner's right to use his property as he deems appropriate reasonable in degree?" *Id.* at 214, 258 S.E. 2d at 449.

In the case at bar, it is clear that the ends sought, *i.e.*, the object of this legislation — the prevention or reduction of loss of life, property damage, etc., due to flood — falls well within the scope of the police power. Indeed, the first article of the flood plain ordinance contains a finding of fact noting the harm periodic flooding inflicts on the people of Asheville thus affecting the public health, safety and welfare:

> The flood hazard areas of Asheville are subject to periodic inundation which threatens to result in loss of life and property, health and safety hazards, disruption of commerce and governmental services, extraordinary public expenditures for flood protection and relief, and impairment of the tax base all of which adversely affect the public health, safety and welfare.

In short, enactment of this ordinance satisfies the first inquiry — whether the object of the legislation is within the scope of the police power.

We turn now to an examination of the reasonableness of the means chosen to implement the public goal of preventing or minimizing flood damage. We note that the ordinance contains a second finding of fact in its first article relating to the cause of this periodic flooding. That finding states:

> These flood losses are caused by the cumulative effect of obstructions in flood plains causing increases in flood heights and velocities, and by the occupancy in flood hazard areas by uses vulnerable to floods or hazardous to other lands which are inadequately elevated, floodproofed or otherwise protected from flood damage.

It appears, therefore, that some of the flood damage is caused by properties within the flood hazard area "which are inadequately elevated, floodproofed or otherwise protected from flood damage." It follows, then, that enactment of an ordinance which requires that new construction and substantial improvements on property within that flood hazard area be built so as to prevent or minimize this flood damage is "reasonably necessary" to fur-

ther the public goal of preventing or reducing flood damage. Indeed, it can be argued that an ordinance requiring, among other things, the floodproofing of new structures is the only feasible manner in which flood damage can be prevented or minimized in a flood hazard area. Having thus determined that the enactment of the ordinance is "reasonably necessary" for the public health, safety and welfare, we turn now to the thrust of plaintiffs' arguments.

Plaintiffs' contentions, in essence, focus on the question of whether the interference with their right to use their property is "reasonable in degree," the second prong of the reasonable means inquiry. Specifically, plaintiffs claim that the enactment of the ordinance is an invalid exercise of the police power because it is unreasonable; it goes so far as to effect a "taking" of their property in violation of their constitutional right to just compensation.[3]

This Court has not previously determined at what point a land-use regulation becomes an invalid exercise of the police power, as applied, because the interference with the property owner's rights is unreasonable, and, in effect constitutes a "taking" of the owner's land. However, this Court has alluded to the "taking" issue in connection with the exercise of the police power in an analogous situation. In *Helms v. City of Charlotte*, 255 N.C. 647, 122 S.E. 2d 817 (1961), a case involving the validity of a zoning ordinance, this Court wrote:

> 'It is a general rule that zoning cannot render private property valueless. The burdens of government must be equal. In other words, if the application of a zoning ordinance has the effect of completely depriving an owner of the beneficial use of his property *by precluding all practical uses or the only use to which it is reasonably adapted*, the ordinance is invalid . . . . A zoning of land for residential purposes is *unreasonable and confiscatory and therefore illegal where it is practically impossible to use the land in question* for residential purposes.' McQuillin: Municipal Corporations, Vol. 8, s. 25-45, pp. 104, 105.

3. Although it is not clear whether plaintiffs are attacking the validity of this land-use ordinance as being unconstitutional on its face or as applied to plaintiffs, we will deal with the issue as being the constitutionality of the ordinance as applied to plaintiffs. We note that in so doing we have impliedly determined that the ordinance is constitutional on its face.

255 N.C. at 653, 122 S.E. 2d at 822 (emphasis added).

The Court in *Helms* remanded the case with directions to the trial court to determine whether the zoned use for the land was "under all the circumstances, practical and of any reasonable value." 255 N.C. at 657, 122 S.E. 2d at 825. In so doing, this Court seemed to indicate that *a zoning ordinance* would be deemed "unreasonable and confiscatory," as applied to a particular piece of property, if the owner of the affected property was deprived of all "practical" use of the property and the property was rendered of no "reasonable value."

In the case at bar, plaintiffs claim that their property has been "taken" because the effect of the ordinance is to deprive them of the reasonable use of their property and to diminish its fair market value. As noted above, the majority of these contested provisions require that new construction and substantial improvements on property located in the flood hazard districts be built so as to prevent or minimize flood damage. These requirements can be characterized as conditional affirmative duties placed on the landowner's use of his property.[4] The requirements are conditional because they apply only to "new construction and substantial improvements." The regulations do not affect in any way the current use of each plaintiff's property; each plaintiff thus continues to have a "practical" use for his property of "reasonable value." *See Helms v. City of Charlotte*, 255 N.C. 647, 122 S.E. 2d 817. Furthermore, plaintiffs are not prohibited from

---

4. We note that Article 7, Section B, Subsection 1, provides that "all fill, encroachments, new construction or substantial improvement shall be prohibited, *except as otherwise provided* herein as a Permitted use or Conditional use." (Emphasis added). Although this provision would appear to be a prohibition on many uses of the properties with few exceptions rather than a conditional affirmative duty (as are the other provisions), this is not the case. Under Section D of that same article we find the following: "New construction or substantial improvements . . . may be permitted provided that approval of said use or construction is approved by the Board of Adjustment . . . and provided an acceptable certification by a registered professional engineer is provided proving that the anticipated encroachment(s) shall not result in any increase of the regulatory flood during occurrence of the base flood discharge." This language indicates that "new construction or substantial improvements" made under Article 7 must, as under the other articles, be built so as to prevent or minimize flood damage. In addition, we note several provisions relating to mobile homes and mobile home parks. These provisions will not be discussed because plaintiffs here are unaffected by those provisions—they all own non-residential properties.

engaging in new construction or substantial improvements on their properties. They are only required to do so in a manner that prevents or minimizes flood damage, that is, in conformance with the land-use regulations.

Plaintiffs argue, however, that the cost of complying with these regulations, should they wish to make improvements upon their properties, is prohibitive. In essence, they contend that their properties have been "taken" because for all practical purposes they cannot add to or change the uses to which they currently put their properties. In addition, plaintiffs claim that the ordinance has diminished the market value of their properties. Even assuming that the cost of complying with the land-use regulations is prohibitive (and we do not decide that it is) and recognizing that the market value of plaintiffs' properties has diminished (a fact found by the trial court), these factors are of no consequence here. As this Court noted in *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 258 S.E. 2d 444, "the mere fact that an ordinance results in the depreciation of the value of an individual's property or restricts to a certain degree the right to develop it as he deems appropriate is not sufficient reason to render the ordinance invalid." *Id.* at 218, 258 S.E. 2d at 451, *citing Zopfi v. City of Wilmington*, 273 N.C. 430, 160 S.E. 2d 325 (1968); and *Helms v. City of Charlotte*, 255 N.C. 647, 122 S.E. 2d 817.

In sum, therefore, we hold that the enactment of this flood plain ordinance is a valid exercise of the police power and does not effect a "taking" of plaintiffs' properties in violation of the North Carolina Constitution. Our holding today is in accord with a federal court decision determining that the National Flood Insurance Act, 42 U.S.C. §§ 4001-4128 (1976) — which requires community adoption of flood plain regulations like the ones at issue here before federal flood insurance is made available in a community — was a constitutional exercise of congressional power and did not constitute a "taking" of the private property affected. *Texas Landowners Rights Ass'n v. Harris*, 453 F. Supp. 1025 (D.D.C. 1978), *aff'd*, 598 F. 2d 311 (D.C. Cir. 1979), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed. 2d 184 (1979). Our decision is also in accord with several other state jurisdictions that have addressed this same or a similar issue. *E.g., Turnpike Realty Co. v. Town of Dedham*, 362 Mass. 221, 284 N.E. 2d 891 (1972), *cert. denied*, 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed. 2d 689 (1975) (enact-

ment of flood plain zoning bylaw similar to the land-use ordinance at issue here was held a constitutional exercise of police power and not a "taking"); *Cappture Realty Corp. v. Bd. of Adjustment of Elmwood Park*, 126 N.J. Super. 200, 313 A. 2d 624 (1973), *aff'd*, 133 N.J. Super. 216, 336 A. 2d 30 (1975) (ordinance declaring a moratorium on construction on flood-prone lands was held a valid exercise of police power and thus no "taking" occurred); *Dur-Bar Realty Co. v. City of Utica*, 57 A.D. 2d 51, 394 N.Y.S. 2d 913 (1977), *aff'd*, 44 N.Y. 2d 1002, 380 N.E. 2d 328, 408 N.Y.S. 2d 502 (1978) (city zoning ordinance restricting certain uses of property within "Land Conservation Districts" to protect properties against flooding was held a constitutional exercise of police power); *Maple Leaf Investors, Inc. v. State of Washington*, 88 Wash. 2d 726, 565 P. 2d 1162 (1977) (prohibition against construction for human habitation within floodway was held a valid exercise of state police power and was not a "taking" or "damaging" of private property for public use).

## B.

We turn now to plaintiffs' challenge that the enactment of the flood plain ordinance is an invalid exercise of the police power because it constitutes a "taking" without just compensation in violation of the Fifth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment.

In *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed. 2d 631 (1978), a leading United States Supreme Court decision in this area, the Supreme Court held that the New York City Landmarks Preservation Law, as applied to plaintiffs, did not constitute a "taking" of plaintiffs' property in violation of the federal constitution. Under the ordinance, the purpose of which is to preserve New York City historic landmarks, the Landmarks Preservation Commission had rejected plaintiffs' plans to construct a multi-story office building over the Penn Central Terminal because the proposed building would be destructive of the terminal's historic and aesthetic features. The landmarks law, which requires a landowner to secure commission approval before exterior alterations can be made to his or her historic buildings, is analogous to the ordinance at issue here which requires that certain standards be met when engaging in new construction or substantial improvements on property located in a

flood hazard area. Both ordinances place conditional affirmative duties on the landowner to meet certain requirements if he or she wishes to engage in new construction or alterations. Indeed, we find no feature of the *Penn Central* case which substantially distinguishes it from the case at bar—at least to the extent that would render the exercise of police power invalid or justify a different conclusion on the "taking" issue. To further support our conclusion, we note the observation the Supreme Court made in *Penn Central* on the broad scope of the police power:

> More importantly for the present case, in instances in which a state tribunal reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land, this Court has upheld land-use regulations that destroyed or adversely affected recognized real property interests.

438 U.S. at 125, 98 S.Ct. at 2659, 57 L.Ed. 2d at 649 (citations omitted).

We hold that enactment of the flood plain ordinance here is valid under the United States Constitution and that no "taking" has occurred here in violation of plaintiffs' federal right to just compensation.

### III.

[2] Plaintiffs also claim the flood plain ordinance violates the equal protection provisions of the federal and state constitutions. Specifically, they argue the ordinance is unconstitutional because it imposes burdens only on those citizens with property in the flood hazard area strictly for the benefit of those citizens with property outside the flood hazard area. We hold, however, that this classification is reasonable and that plaintiffs are not impermissibly burdened under either constitution.

In *Guthrie v. Taylor*, 279 N.C. 703, 185 S.E. 2d 193 (1971), *cert. denied*, 406 U.S. 920, 92 S.Ct. 1774, 32 L.Ed. 2d 119 (1972), this Court articulated the rule to be applied in determining whether a legislative classification violates the equal protection guarantees:

> Neither the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution nor the similar

language in Art. I, § 19, of the Constitution of North Carolina takes from the State the power to classify persons or activities when there is reasonable basis for such classification and for the consequent difference in treatment under the law.

*Id.* at 713, 185 S.E. 2d at 201 (citations omitted); *A-S-P Associates v. City of Raleigh,* 298 N.C. at 226, 258 S.E. 2d at 456 (quoting the above standard). *See also Village of Belle Terre v. Boraas,* 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed. 2d 797, 803 (1974) (zoning ordinance upheld against charge that it violated the equal protection guarantee where the classification was reasonable, not arbitrary, and bore a rational relationship to a permissible state objective).

The Court in *Guthrie* then stated, "[t]he test is whether the difference in treatment made by the law has a reasonable basis in relation to the purpose and subject matter of the legislation." 279 N.C. at 714, 185 S.E. 2d at 201 (citations omitted). As noted previously, the city of Asheville set out in the first article of its flood plain ordinance two findings of fact which defined the situation they were attempting to address: the damage caused by periodic flooding. The city then stated in another section of its first article that "[i]t is the purpose of this Ordinance to promote the public health, safety and general welfare and to minimize public and private losses due to flood conditions in specific areas . . . ."

In enacting the flood plain ordinance, the city of Asheville was attempting to prevent or minimize losses caused by periodic floods. In so doing, it placed on property within the flood hazard districts land-use regulations aimed at preventing or reducing flood damage. It is clear that an ordinance which regulates only the use of land in a hazardous area and does not regulate the use of property outside the hazardous area is a reasonable classification. Indeed, to do otherwise would be unreasonable. Plaintiffs claim, however, that the burdens imposed upon them benefit other citizens in the same community at their expense. We agree that plaintiffs, by virtue of the locations of their properties, shoulder the burden of these regulations while those with property outside the flood hazard districts are not so burdened. A difference in treatment exists in all such legislative classifications, however. As we have noted above, the only requirement

necessary to comply with the equal protection provisions of both the federal and state constitutions is that the classification be reasonable and bear a rational relationship to a permissible state objective. Moreover, we find that plaintiffs here are benefited because of the enactment of these regulations. Besides the protection from flood damage which the land-use regulations provide, plaintiffs also are helped in a less direct way by the ordinance: they are eligible for federal flood insurance and federal financial assistance for acquisition and construction purposes *only if* the ordinance is enacted.

In his fifth conclusion of law, Judge Burroughs stated that: "[s]hould a community decide not to participate in the National Flood Insurance Program, Federal financial assistance for acquisition or construction of structures may not be provided in the flood hazard area and flood insurance is not made available within that community." We further note that under the National Flood Insurance Act of 1968, as amended, 42 U.S.C. §§ 4001-4128 (1976), "No new flood insurance coverage shall be provided under this chapter in any area (or subdivision thereof) unless an appropriate public body shall have adopted adequate land use and control measures" like the land-use regulations at issue here. 42 U.S.C. § 4022 (1976). We also note that 42 U.S.C. § 4012a(a) (1976) prohibits a federal officer from approving "any financial assistance for acquisition or construction purposes" in flood hazard areas if the property is not adequately covered by flood insurance. That statute provides as follows:

After the expiration of sixty days following December 31, 1973, no Federal officer or agency shall approve any financial assistance for acquisition or construction purposes for use in any area that has been identified by the Secretary as an area having special flood hazards and in which the sale of flood insurance has been made available under the National Flood Insurance Act of 1968 [42 U.S.C. 4001 et seq.], unless the building or mobile home and any personal property to which such financial assistance relates is, during the anticipated economic or useful life of the project, covered by flood insurance in an amount at least equal to its development or project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the

particular type of property under the National Flood Insurance Act of 1968, whichever is less . . . .

We conclude, therefore, that the classification created by the ordinance is reasonable, and, indeed, the ordinance benefits plaintiffs not only directly, but indirectly as well by making available federal flood insurance and financial assistance for acquisition and construction purposes. We hold that the ordinance does not violate the equal protection guarantees under either the federal or state constitution.

## IV.

**[3]** Plaintiffs also claim that the trial court erred in not admitting into evidence the testimony of three property owners concerning the ordinance's damaging effect on the value of their property. We agree that the trial court erred; however, we hold that the error was not prejudicial.

In *State Highway Comm'n v. Helderman,* 285 N.C. 645, 207 S.E. 2d 720 (1974), Justice Sharp (later Chief Justice) set forth the majority rule that the owner of property is competent to testify as to the value of his own property even though his knowledge on the subject would not qualify him as a witness were he not the owner. Justice Sharp explained the rule and the reason for it this way:

> Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value even though his knowledge on the subject would not qualify him as a witness were he not the owner. 'He is deemed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, to have a reasonably good idea of what it is worth. The weight of his testimony is for the jury, and it is generally understood that the opinion of the owner is so far affected by bias that it amounts to little more than a definite statement of the maximum figure of his contention . . . .' 5 Nichols, Law of Eminent Domain, § 18.4(2) (3rd ed., 1969), wherein the decisions pro and con are collected. *Accord,* 32 C.J.S., *Evidence* § 546 (116) (1964); 32 C.J.S., *Evidence* § 545(d)(3) (pp. 305-306) (1942); Jahr, Law of Eminent Domain § 133 (1953); 3 Wigmore on

Evidence, §§ 714, 716 (Chadbourn rev. 1970). *See Light Co. v. Rogers*, 207 N.C. 751, 753, 178 S.E. 575, 576 (1935).

*Id.* at 652, 207 S.E. 2d at 725. *See also Harrelson v. Gooden*, 229 N.C. 654, 50 S.E. 2d 901 (1948). *See generally* 1 H. Brandis, *Brandis on North Carolina Evidence* § 128, at 493-94 (1982).

In *Helderman* the Court noted that the owner was asked if he was familiar with the fair market value of real estate in the vicinity of his property and if he had an opinion satisfactory to himself as to the fair market value of his property on or after the critical point in time. The owner stated, "Yes sir I think so."

In the case at bar, however, none of the three property owners — Andrew Gennett, Benson Slosman, or Clay Chandley — were asked the above two questions concerning their qualifications. We hold, nevertheless, that under the general rule articulated above that an owner is entitled to testify to the value of his own property "unless it affirmatively appears" that the owner does not know the value, the exclusion of each owner's testimony was error. However, the erroneous rulings in this case were not prejudicial. The burden is on the appellant not only to show error, but to show *prejudicial* error, *i.e.*, that a different result would have likely ensued had the error not occurred. *Board of Education v. Lamm*, 276 N.C. 487, 173 S.E. 2d 281 (1970); *Burgess v. Construction Co.*, 264 N.C. 82, 140 S.E. 2d 766 (1965); *In Re Will of Thompson*, 248 N.C. 588, 104 S.E. 2d 280 (1958); *Johnson v. Heath*, 240 N.C. 255, 81 S.E. 2d 657 (1954); *Collins v. Lamb*, 215 N.C. 719, 2 S.E. 2d 863 (1939); G.S. § 1A-1, Rule 61 (1969). This the appellant has failed to demonstrate. We note that Judge Burroughs stated in his sixth conclusion of law that "the mere fact that [the ordinance] *seriously depreciates* the value of properties in said areas does not establish its invalidity." (Emphasis added.) It is clear that Judge Burroughs found from the other evidence that the value of the land was "seriously depreciate[d]." However, as we noted above, a mere diminution in value is not sufficient to render the enactment of land-use regulations invalid. *See A-S-P Associates v. City of Raleigh*, 298 N.C. at 218, 258 S.E. 2d at 451.

## V.

Finally, plaintiffs claim that the trial court failed to find certain facts "as a matter of law." Specifically, plaintiffs claim that

the trial court erred in not finding that: (1) essentially all of the property is used exclusively for industrial and commercial purposes; (2) the property values have been adversely affected by the ordinance; (3) the cost of complying with the land-use regulations is prohibitive; and (4) modifications and improvements made to structures in the flood fringe district must conform to the ordinance. Suffice it to say that even if the trial court had found these facts (and indeed it did find that the property values had substantially depreciated) these facts would not have affected the legal conclusions reached at trial or on appeal here.

We hold, therefore, that the Asheville flood plain ordinance is valid. The judgment of the trial court is affirmed.

Affirmed.

Justices MARTIN and FRYE took no part in the consideration or decision of this case.