IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-761

Filed 2 April 2024

Swain County, No. 21-CVS-185; Jackson County, No. 21-CVS-500

NORTH CAROLINA CEMETERY COMMISSION, Plaintiff,

v.

SMOKY MOUNTAIN MEMORIAL PARKS, INC. AND SHEILA DIANE GAHAGAN,
Defendants.

Appeal by defendants from orders entered 9 February 2023 by Judge William

Coward in Jackson County Superior Court. Heard in the Court of Appeals 6 February

2024.

> *Maynard Nexsen PC, by David P. Ferrell and George T. Smith, for plaintiff-appellee.*
>
> *Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Jonathan H. Dunlap and Esther Manheimer, for defendants-appellants.*

THOMPSON, Judge.

Defendants Smoky Mountain Memorial Parks, Inc. and Sheila[1] Diane

Gahagan appeal from the trial court's order granting plaintiff's motion for summary

judgment and denying their motion for summary judgment. On appeal, defendants

contend that the applicable statute is void for vagueness, that the property in

---

[1] The orders from which appeal is taken identified defendant Gahagan as "Shelia" in their captions; however, this appears to be a scrivener's error, as defendant Gahagan is referred to as "Sheila" within the orders and throughout the record on appeal.

question was never dedicated for use as a cemetery, and that the statute as applied constitutes an unconstitutional taking. After careful review, we affirm.

## I. Factual Background and Procedural History

The North Carolina Cemetery Commission (plaintiff) initiated these actions by filing complaints and notices of lis pendens, and issuing summonses against Smoky Mountain Memorial Parks, Inc. and Sheila Diane Gahagan (defendants) on 18 August 2021 in Swain and Jackson County Superior Courts.

Defendant Sheila Gahagan (Gahagan) was appointed as a receiver in a separate action that involved the previous owners of the two cemeteries at issue in the present case. In the prior receivership action, defendant Gahagan was ordered to develop a liquidation plan that included the sale of the two cemeteries; however, the bids received for the properties were deemed "unrealistic compared to the court's perceived value of the properties and potential income from the operations of the [c]emeteries." Instead, the court ordered that Gahagan transfer the properties to herself as payment for her services rendered as the receiver in that action.

By receiver deed executed 22 May 2013, defendant Gahagan "assign[ed] and transfer[red] all of her right, title and interest . . . of said cemeteries to Smoky Mountain Memorial Parks, Inc., a North Carolina Corporation, of which said [Gahagan] is the sole shareholder." Those deeds included the transfer of "18.67 acres, as shown on a plat . . . recorded in . . . [the] Swain County Public Registry" and "9.35 acres . . . as shown on a plat . . . recorded in . . . the office of the Register of Deeds for

Jackson County . . . ." In her individual and official capacities, defendant Gahagan's signature is affixed to both documents under seal. Respectively, those cemeteries have since been named "Swain Memorial Park" and "Fairview Memorial Park."

From 2013 to 2020, defendants filed "Annual Report[s]" with plaintiff, wherein defendants stated that the "[t]otal [a]creage of cemetery" was "18.67" acres for Swain Memorial Park. Similarly, from 2014[2] to 2020,[3] defendants filed these same "Annual Report[s]" with plaintiff, wherein defendants stated that Fairview Memorial Park consisted of "9.35" acres. These Annual Reports filed with plaintiff, and affixed with defendant Gahagan's signature, contain a disclaimer which states that:

> I hereby certify that this report is correct. Also, in accordance with [N.C. Gen. Stat. §] 65-69, I understand that *cemeteries may not sell, encumber, transfer or dispose of land that results in the cemetery having less than* [thirty] *acres.* I understand that any transaction in violation of [N.C. Gen. Stat. §] 65-69 is void. *Not voidable, void.*

(emphases added).

In 2020, Gahagan expressed a desire to leave the cemetery business and sought from plaintiff "written verification that land adjoining Fairview Memorial Park and Swain Memorial Park can be sold without restriction under the Cemetery Act as long

---

[2] The "Annual Report[s]" filed in 2014 and 2015 indicate that Fairview Cemetery consisted of "9.34" acres, not 9.35. Assuming that these acreages are correct, they do not impact our analysis, as the Cemetery Act does not bar cemeteries consisting of less than thirty acres from *adding* land; it prohibits such cemeteries from "disposing of such lands." *See* N.C. Gen. Stat. § 65-69(d) (2023) (prohibiting cemeteries "which own or control a total of less than [thirty] acres" from "dispos[ing] of any of such lands").

[3] Defendants' "Annual Report" for Fairview Memorial Park in 2019 is absent from the record.

as the actual cemetery is not disposed of." However, plaintiff informed Gahagan that "any sale of acreage associated with Fairview and Swain as known and licensed by [plaintiff would] be prohibited and void by statute if executed. We recognize Fairview as 9.35 acres and Swain as 18.67 acres *as noted in your letter.*" (emphasis added).

On 25 June 2021, defendant Gahagan filed Articles of Dissolution for Smoky Mountain Memorial Parks, Inc., which went into effect on 1 July 2021. On 7 July 2021, contrary to plaintiff's warning that doing so would be in violation of the minimum acreage statute of the North Carolina Cemetery Act (Cemetery Act), defendant Smoky Mountain Memorial Parks, Inc. transferred the properties back to defendant Gahagan by warranty deed and recorded surveys that subdivided the properties into five separate tracts. Defendant Gahagan stated that three of these tracts were "not part of the cemeter[ies]" because they did not "contain burial lots or lots sold to be used as burial lots, mausoleums or columbarium[s] . . . ."

On 18 August 2021, plaintiff filed complaints in Jackson County and Swain County Superior Court, seeking to void the conveyances of the subdivided properties pursuant to the minimum acreage statute of the Cemetery Act. On 26 and 27 October 2021, defendants filed motions to dismiss, answers, and counterclaims in Jackson County and Swain County Superior Courts, respectively. On 26 and 29 August 2022, defendants filed motions for summary judgment in Jackson County and Swain County Superior Courts, respectively. Plaintiff filed amended motions for summary judgment on 7 November 2022 in Jackson and Swain County Superior Courts.

While the cases were pending, on 26 February 2022, defendant Gahagan filed her "Annual Report" for the year 2021 with plaintiff; however, in this report, for the very first time, Gahagan asserted that Swain Memorial Park consisted of "5.32" acres, and that she "disagree[d] with [plaintiff's] interpretation of cemetery land."

The two complaints were consolidated for a hearing on 14 November 2022 in Jackson County Superior Court, and by order entered 9 February 2023, the court granted plaintiff's motions for summary judgment and denied defendants' motions for summary judgment. From this order, defendants filed timely written notice of appeal.

## II. Analysis

Before this Court, defendants allege the following issues:

> 1. Whether the lower court erred in granting summary judgment in favor of [plaintiff] and denying [defendants]' summary judgment [motions][?]
>
> 2. Whether the lower court erred as a matter of law in permitting [plaintiff] to restrict the sale of [d]efendant[s'] private land which is proximate to [their] cemeteries where the property [plaintiff] seeks to restrict has never been used or dedicated for use as a cemetery[?]
>
> 3. Whether [plaintiff's] regulation of the property in question is a taking under the North Carolina and United States [C]onstitutions[?]
>
> 4. Whether the statute at issue is unconstitutionally void for vagueness as applied[?]

5. Whether [defendants] should be estopped from taking the position that the property in question is non-cemetery property[?]

6. Whether [defendants] should have been granted summary judgment under the Marketable Title Act[?]

We will address the dispositive issues, not necessarily in this order, in the analysis to follow.

## A. Standard of review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and internal quotation marks omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation, internal quotation marks, and emphasis omitted).

## B. Void for vagueness

As a matter of first impression, this case requires our Court to interpret a statute, N.C. Gen. Stat. § 65-69, which defendants argue "is unconstitutionally void for vagueness as applied" because it "fail[s] to give a person of ordinary intelligence a reasonable opportunity to know how broadly th[e] term [cemetery] is to be applied." Therefore, we will address defendants' void for vagueness argument at the outset.

"A statute is unconstitutionally vague if it either: (1) fails to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited; or (2) fails to provide explicit standards for those who apply the law." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 186, 594 S.E.2d 1, 19 (2004) (citation, internal quotation marks, and brackets omitted). "The Constitution requires that the statute merely prescribe boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly." *Id.* (citation and internal quotation marks omitted).

N.C. Gen. Stat. § 65-69(d), which governs the "[m]inimum acreage; sale or disposition of cemetery lands[,]" provides that:

> The provisions of . . . this section relating to the requirement for minimum acreage shall not apply to those cemeteries licensed by [plaintiff] on or before [1 July 1967], which own or control a total of less than [thirty] acres of land; provided that such cemeteries shall not dispose of any of such lands. A nongovernment lien or other interest in land acquired in violation of this section is void.

N.C. Gen. Stat. § 65-69(d) (2023).

Here, defendants contend that " 'cemetery' is a defined term under the Act, meaning, in essence, property where human remains are interred or preserved." However, this is not the definition of "cemetery" pursuant to the statute, and it appears that defendants have adopted their own definition of "cemetery" contrary to the statutory definition set forth by our legislature in N.C. Gen. Stat. § 65-48(3). We do not articulate statutorily defined terms "in essence," nor do we condone defendants' misrepresentation of our legislature's statutory definition of "cemetery"

in order to argue that the statute is void for vagueness because of the application of that term.

Defendants correctly identified the definition of "cemetery" earlier in their appellate brief, wherein they acknowledged that a cemetery "is defined in [N.C. Gen. Stat.] § 65-48(3)" as:

> 'Cemetery' means any one or a combination of more than one of the following in a place used or to be used and dedicated or designated for cemetery purposes:
>
> a. A burial park, for earth interment.
>
> b. A mausoleum.
>
> c. A columbarium.

N.C. Gen. Stat. § 65-48(3).

Defendants' argument on this point simply ignores the disjunctive "or" present in the statutory definition of "cemetery" and seems to misunderstand the nature of a cemetery, which, as plaintiff succinctly notes, includes plotted grave sites that are "used" and the remaining portion of the cemetery unplotted, "to be used." Indeed, just because there are not yet bodies in the ground does not mean that the property is not "a place used *or to be used* and dedicated or designated for cemetery purposes[.]" N.C. Gen. Stat. § 65-48(3) (emphasis added). Defendants' disingenuous attempt to construe the definition of the term "cemetery" to mean "in essence, property where human remains are interred or preserved" is contrary to the statutory definition *previously defined in defendants' appellate brief*, and does not pass muster.

We conclude that the minimum acreage statute in N.C. Gen. Stat. § 65-69(d) is not unconstitutionally vague because it provides "the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and "provide[s] explicit standards for those who apply the law" with "boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly." *Rhyne*, 358 N.C. at 186, 594 S.E.2d at 19 (citation, internal quotation marks, and brackets omitted). Those boundaries require that "a place used or to be used and dedicated or designated for cemetery purposes" that is "licensed by [plaintiff] on or before [1 July] 1967, which own[s] or control[s] a total of less than [thirty] acres of land . . . shall not dispose of *any such lands*." N.C. Gen. Stat. §§ 65-48(3), 65-69(d) (emphasis added). Having determined that the statute that governs this case is not unconstitutionally void for vagueness as applied, we will now address defendants' remaining arguments on appeal.

**C. North Carolina Cemetery Act**

Alternatively, defendants contend that "[t]he [n]on-[c]emetery [p]roperty was never dedicated for use as a cemetery[,]" and that "[plaintiff] should be able to show when and how the property was dedicated for such use, and that both parties complied with the prevailing laws or statutes governing dedication." We disagree, as defendants have, again, ignored the definition of "cemetery" set forth by our legislature in making this argument.

"The best indicia of [legislative] intent [is] the language of the statute, the spirit of the act and what the act seeks to accomplish." *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 547, 809 S.E.2d 853, 858 (2018) (citation and ellipsis omitted). "The process of construing a statutory provision must begin with an examination of the relevant statutory language." *Id.* "It is well settled that where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *Id.* (citation, internal quotation marks, and brackets omitted). "An unambiguous word has a definite and well[-]known sense in the law." *Fid. Bank v. N.C. Dep't of Revenue*, 370 N.C. 10, 19, 803 S.E.2d 142, 148 (2017) (citation and internal quotation marks omitted). However, "[i]n the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute." *Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000).

Defendants' assertion that the "[n]on-[c]emetery [p]roperty was never dedicated for use as a cemetery" and is therefore not subject to the minimum acreage statute simply ignores the "or" in N.C. Gen. Stat. § 65-48(3), which states that a cemetery is a "place used or to be used and dedicated *or designated* for cemetery purposes[.]" N.C. Gen. Stat. § 65-48(3) (emphasis added).

"[D]esignated" is not defined in the Cemetery Act, nor does "designated" have a "definite and well[-]known sense in the law." *Fid. Bank*, 370 N.C. at 19, 803 S.E.2d at 148 (citation omitted). However, Black's Law Dictionary defines "designate" as,

"[t]o choose (someone or something) for a particular job or purpose." *Designate*, *Black's Law Dictionary* (11th ed. 2019). Therefore, the statute governs "a place used or to be used and dedicated or 'chose[n] for a particular job or purpose[,]' cemetery purposes."

Moreover, the Cemetery Act "established [plaintiff] with the power and duty to adopt rules and regulations to be followed in the enforcement of this Article." N.C. Gen. Stat. § 65-49. The Cemetery Act also provides that "[n]o legal entity shall engage in the business of operating a cemetery company . . . without first obtaining a license from [plaintiff]." *Id.* § 65-55. Finally, N.C. Gen. Stat. § 65-67 mandates that "[a]pplications for renewal license must be submitted . . . every year in the case of an existing cemetery company." *Id.* § 65-67.

Here, the record is replete with evidence that the entire 18.67 acres of Swain Memorial Park and 9.35 acres of Fairview Memorial Park were " 'chose[n] for a particular purpose[,]' cemetery purposes." Indeed, defendant Gahagan represented that Swain Memorial Park consisted of 18.67 acres, and Fairview Memorial Park consisted of 9.35 acres, when she became the owner of the cemeteries in 2013, and in defendants' Annual Reports to plaintiff, which allowed defendants to renew their licenses to operate the two for-profit cemeteries after Gahagan became the owner of the cemeteries in 2013.

Plaintiff is the entity that our legislature vested "with the power and duty to adopt rules and regulations to be followed in the enforcement of th[e Cemetery Act,]"

and defendant was required to submit Annual Reports to plaintiff "every year" in order to "obtain[ ] a license" to "engage in the business of operating a cemetery company . . . ." *Id.* §§ 65-49, -55, -67. We conclude that defendants' representations to plaintiff in these Annual Reports constituted a "designat[ion]" for purposes of the Cemetery Act, as "the language of the statute, the spirit of the act and what the act seeks to accomplish[,]" are reconciled under this definition of "designated." *Wilkie*, 370 N.C. at 547, 809 S.E.2d at 858 (citation and ellipsis omitted).

For the aforementioned reasons, we hold that the entire 18.67 acres and 9.35 acres of the properties in question are "cemeter[ies,]" subject to the minimum acreage statute, because they were "*designated for cemetery purposes*[,]" N.C. Gen. Stat. § 65-48(3), through defendants' representations to plaintiff over the years that they sought licensure to operate the for-profit cemeteries.

**D. Constitutional takings**

Defendants also contend that plaintiff's "application of [N.C. Gen. Stat.] § 65-69(d) to the [n]on-[c]emetery [p]roperty[4] constitutes a taking under the North Carolina [C]onstitution" or "a taking under the United States Constitution." Defendants argue that "[u]nder the 'ends' prong of *Responsible Citizens*, it is not within the State's police power to use [N.C. Gen. Stat.] § 65-69 to regulate property

---

[4] Defendants incorrectly contend that there is "cemetery" and "non-cemetery" property in the present case. As established above, the entire 18.67 acres of Swain Memorial Park and the entire 9.35 acres of Fairview Memorial Park were designated as cemeteries, subjecting them to the minimum acreage requirement of the Cemetery Act.

that is not voluntarily and intentionally dedicated[,]"[5] or in the alternative, that plaintiff's "application . . . constitutes a taking under the 'means' prong of *Responsible Citizens*." *See, e.g.*, *Responsible Citizens v. City of Asheville*, 308 N.C. 255, 302 S.E.2d 204 (1983) (establishing the "ends-means" analysis to determine whether an exercise of the police power is legitimate). We disagree, because plaintiff's enforcement of the Cemetery Act's minimum acreage requirement was a valid exercise of regulations pursuant to the police power of the State of North Carolina.

"A taking does not occur simply because government action deprives an owner of previously available property rights." *Finch v. City of Durham*, 325 N.C. 352, 366, 384 S.E.2d 8, 16 (1989). "Determining if governmental action constitutes a taking depends upon whether a particular act is an exercise of the police power or of the power of eminent domain." *Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 854, 786 S.E.2d 919, 924 (2016) (citation and internal quotation marks omitted). "[T]he [S]tate must compensate for property rights taken by eminent domain; however, damages resulting from the proper exercise of the police power are noncompensable." *Id.* at 854, 786 S.E.2d at 925 (citation and brackets omitted).

"Under the police power, the government *regulates* property to prevent injury to the public." *Id.* at 854, 786 S.E.2d at 924 (emphasis in original). On the other hand, "[u]nder the power of eminent domain, the government *takes* property for public use

---

[5] As established above, defendants designated the properties as cemeteries pursuant to the Cemetery Act's licensure requirements.

because such action is advantageous or beneficial to the public." *Id.* (emphasis in original). However, "[p]olice power regulations must be enacted in good faith, and have appropriate and direct connection with that protection to life, health, and property which each State owes to her citizens." *Id.* (citation, internal quotation marks, and brackets omitted). "An exercise of police power outside these bounds may result in a taking." *See id.* (referencing *Responsible Citizens* for the proposition).

"Several principles must be borne in mind when considering a due process challenge to governmental regulation of private property on grounds that it is an invalid exercise of the police power." *Responsible Citizens*, 308 N.C. at 261, 302 S.E.2d at 208 (citation omitted). "First, is the object of the legislation within the scope of the police power?" *Id.* (citation omitted). "Second, considering all the surrounding circumstances and particular facts of the case[,] is the means by which the governmental entity has chosen to regulate reasonable?" *Id.* (citation omitted). We will address each of these inquiries in the analysis to follow.

### i. Police power

Here, "[t]he societal benefits envisioned by the [Cemetery Act] [are] designed primarily to prevent injury or protect the health, safety, and welfare of the public." *Kirby*, 368 N.C. at 855, 786 S.E.2d at 925. By placing limitations on the minimum acreage of cemeteries in order to preserve the serenity and sanctity of these lands, "the government *regulates* property to prevent injury to the public." *Id.* at 854, 786 S.E.2d at 924 (emphasis in original). The government is not "*tak*[*ing*] property for

- 14 -

public use because such action is advantageous or beneficial to the public." *Id.* (emphasis in original). Therefore, we conclude that the challenged "governmental action . . . is an exercise of the police power" of the State of North Carolina, not an exercise of "the power of eminent domain." *Id.* (citation omitted).

Moreover, "[o]ur Courts have long held that preservation of the sanctity of grave sites is a proper exercise of police power by the State of North Carolina." *Massey v. Hoffman*, 184 N.C. App. 731, 735, 647 S.E.2d 457, 460–61 (2007). Indeed, "[t]he sentiment of all civilized peoples . . . has held in great reverence the resting places of the dead as hallowed ground" and "[i]t is a sound public policy to protect the bur[ial] place of the dead." *Id.* at 735–36, 647 S.E.2d at 461 (citation and brackets omitted).

We conclude that the "object[s] of the legislation[,]" cemeteries, are "within the scope of the police power" of the State of North Carolina. *Responsible Citizens*, 308 N.C. at 261, 302 S.E.2d at 208 (citation omitted). However, our takings analysis does not end here, as "[a]n exercise of police power . . . may [still] result in a taking." *Kirby*, 368 N.C. at 854, 786 S.E.2d at 924. Therefore, we must determine whether, after "considering all the surrounding circumstances and particular facts of the case[,] is the means by which the governmental entity has chosen to regulate reasonable?" *Responsible Citizens*, 308 N.C. at 261, 302 S.E.2d at 208 (citation omitted).

### ii. Reasonable interference with owner's property rights

To determine whether the means by which the governmental entity has chosen to regulate are reasonable, we conduct a two-pronged test: (1) "[i]s the statute in its

application reasonably necessary to promote the accomplishment of a public good[,]" and (2) "is the interference with the owner's right to use his property as he deems appropriate reasonable in degree?" *Id.* at 261–62, 302 S.E.2d at 208 (citation omitted). A land-use regulation's interference with the property owner's rights is unreasonable when its application "has the effect of completely depriving an owner of the beneficial use of his property by precluding all practical uses or the only use to which it is reasonably adapted . . . ." *See id.* at 263, 302 S.E.2d at 209–10 (citation and emphasis omitted) (extending takings analysis under "an analogous situation[,]" zoning ordinances, to land-use regulations).

However, "the mere fact that a[ ] [land-use regulation] results in the depreciation of the value of an individual's property or restricts to a certain degree the right to develop it as he deems appropriate is not [a] sufficient reason to render the" regulation invalid. *Id.* at 265, 302 S.E.2d at 210 (citation omitted). "[I]f an act is a proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable." *Massey*, 184 N.C. App. at 735, 647 S.E.2d at 460 (citation and internal quotation marks omitted).

In the present case, after "considering all the surrounding circumstances and particular facts of the case[,]" we conclude that "the means by which the governmental entity has chosen to regulate" are reasonable. *Responsible Citizens*, 308 N.C. at 261, 302 S.E.2d at 208 (citation omitted). That is, "the [minimum acreage

requirement of the Cemetery Act] in its application [is] reasonably necessary to promote the accomplishment of a public good[,]" and "the interference with [defendants'] right to use [their] property as [t]he[y] deem[ ] appropriate [is] reasonable in degree." *Id.* at 261–62, 302 S.E.2d at 208 (citation omitted).

We reach this conclusion because the minimum acreage requirement of the Cemetery Act does not have "the effect of completely depriving [defendants] of the beneficial use of [their] property by precluding all practical uses or the only use to which it is reasonably adapted . . . ." *Id.* at 263, 302 S.E.2d at 209–10 (citation and emphasis omitted). Defendants are still entitled to utilize the entirety of the property as part of a for-profit cemetery, pursuant to the Cemetery Act.

Our legislature determined that a regulatory scheme governing the minimum acreage of burial sites was necessary to preserve the sanctity and serenity of grave sites, and plaintiff's enforcement of the minimum acreage requirement of the Cemetery Act is not an unconstitutional taking, but a proper exercise of the police power by the State of North Carolina. As a "proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable." *Massey*, 184 N.C. App. at 735, 647 S.E.2d at 460 (citation and internal quotation marks omitted).

For the aforementioned reasons, we conclude that plaintiff's enforcement of the Cemetery Act does not constitute a taking under the North Carolina or United States

Constitutions, but is a valid exercise of the police power of the State of North Carolina.

**G. Marketable Title Act**

Finally, defendants contend that the court "should have granted summary judgment in favor of [d]efendants under the Marketable Title Act." We disagree, as defendants made no argument before the trial court that the Marketable Title Act warranted summary judgment in their favor.

It is well established that, "the law does not permit parties to swap horses between courts in order to get a better mount" before an appellate court. *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934). Here, our careful "examination of the record discloses that the cause was not tried upon th[e] [Marketable Title Act] theory," *id.*, and we decline to address defendants' arguments regarding the Marketable Title Act.

### III. Conclusion

For the aforementioned reasons, we conclude that N.C. Gen. Stat. § 65-69(d) is not void for vagueness as applied; that defendants designated the entirety of the Swain and Fairview Memorial Cemeteries for cemetery purposes through their representations to plaintiff, thus subjecting them to the minimum acreage statute of the Cemetery Act; and that the minimum acreage statute is not an unconstitutional taking, but a proper exercise of the police power of the State of North Carolina.

AFFIRMED.

Judges STROUD and FLOOD concur.