**WEEKS v. N.C. DEPT. OF NAT. RESOURCES AND COMM. DEVELOPMENT**

[97 N.C. App. 215 (1990)]

ORIN HAYWOOD WEEKS, JR. v. NORTH CAROLINA DEPARTMENT OF
NATURAL RESOURCES AND COMMUNITY DEVELOPMENT AND NORTH
CAROLINA COASTAL RESOURCES COMMISSION

No. 893SC495

(Filed 6 February 1990)

1. **Administrative Law § 5 (NCI3d)— denial of development permit—appeal to superior court—availability of summary judgment**

   The trial court did not err by granting summary judgment for the State where the Coastal Resources Commission denied plaintiff a major development permit to build a 900-foot-long pier in Bogue Sound and plaintiff filed a complaint in superior court alleging an unreasonable exercise of police power and requesting relief under N.C.G.S. § 113A-123(b) rather than appealing the Commission's findings pursuant to N.C.G.S. § 113A-123(a). Although plaintiff contended that the grant of summary judgment rendered the statutory provision for a jury trial meaningless, the device of summary judgment allows the court to pierce the pleadings to discern whether the parties' forecast of evidence reveals that more than questions of law are involved. Plaintiff has the right to use the statutory method for determining whether a taking occurred, and within that method can seek a jury trial on the takings issue if he presents an unresolved issue of fact, but is barred from relitigating the same issues of fact that the Commission resolved after hearing evidence concerning plaintiff's application.

   **Am Jur 2d, Summary Judgment § 4.**

2. **Constitutional Law § 23.1 (NCI3d); Waters and Watercourses § 6.1 (NCI3d)— pier in Bogue Sound—permit denied—not a taking**

   The trial court did not err by granting summary judgment for the State where plaintiff contended that the Coastal Resources Commission's denial of a major development permit constituted a taking without compensation where the Commission denied the permit; plaintiff filed an action in superior court without appealing the Commission's findings; the State introduced the Commission's findings; plaintiff presented no evidence at the summary judgment hearing to dispute the findings; and the evidence showed that plaintiff was not de-

prived of all practical uses of his property by the denial of his application to build a 900-foot pier into Bogue Sound.

**Am Jur 2d, Wharves §§ 8, 25.**

APPEAL by plaintiff from order entered 21 February 1989 by *Judge Charles B. Winberry* in CARTERET County Superior Court. Heard in the Court of Appeals 8 November 1989.

*Wheatly, Wheatly, Nobles, Weeks & Wainwright, P.A., by C. R. Wheatly, III, for plaintiff-appellant.*

*Lacy H. Thornburg, Attorney General, by Robin W. Smith, Assistant Attorney General, for the State.*

GREENE, Judge.

Plaintiff-petitioner appeals the trial court's grant of summary judgment for the State. The undisputed facts show that plaintiff is a littoral[1] property owner on Bogue Sound who applied for a major development permit to build a 900-foot-long pier to reach deep waters in which to dock his sailboat. Bogue Sound is a portion of Atlantic Ocean waters subject to the ebb and flow of the tide. Defendants are administrative bodies of the State of North Carolina. North Carolina Department of Natural Resources and Community Development ("NRCD") is the administrative body administering the Coastal Area Management Act ("CAMA"), pursuant to N.C.G.S. § 113A-100, et seq. North Carolina Coastal Resources Commission ("Commission") is the administrative arm of NRCD, established by the General Assembly to designate areas of environmental concern and to consider applications for development in these areas. N.C.G.S. §§ 113A-104 (1983), 113A-113 (1983), 113A-118 (1987). Plaintiff applied for a major development permit to build the pier pursuant to N.C.G.S. § 113A-118(d)(1). N.C.G.S. § 113A-120 provides:

(a) The responsible official or body shall deny the application for permit upon finding:

. . . .

---

1. Although the terms "riparian" and "littoral" are often used interchangeably, plaintiff is a littoral proprietor. A "riparian" right is one "[b]elonging or relating to the bank of a river or stream . . . The term is sometimes used as relating to the shore of the sea or other tidal water . . . [b]ut this is not accurate. The proper word to be employed in such connections is 'littoral.'" Black's Law Dictionary 1192 (5th ed. 1979).

(5) In the case of areas covered by G.S. 113A-113(b)(5), that the development will jeopardize the public rights or interests specified in said subdivision.

N.C.G.S. § 113A-120(a)(5) (1987). N.C.G.S. § 113A-113(b)(5) provides that the Commission can designate as areas of environmental concern "waterways and lands under or flowed by tidal waters or navigable waters, to which the public may have rights of access or public trust rights . . ." N.C.G.S. § 113A-113 (1983). The Commission considered and denied plaintiff's application.

Without appealing the Commission's findings pursuant to N.C.G.S. § 113A-123(a), plaintiff filed a complaint in the Superior Court requesting the relief provided in § 113A-123(b), alleging that the Commission's actions were an unreasonable exercise of police power. N.C.G.S. § 113A-123 (1983).

In his complaint, plaintiff alleges:

7. At periods of high water the area of approximately 600 feet from the shoreline of the land of the Plaintiff is not navigable *except by shallow draft vessels*. [Emphasis added.]

8. That the Plaintiff advised the [Commission] that he wished to keep a small sailboat in front of his house, that is why he needed to get to at least 3½ feet of water.

. . . .

15. That the final order of the Coastal Resources Commission so restricts the use of Plaintiff's property, as to deprive him of the practical uses thereof.

16. That the actions of the Defendants are an unreasonable exercise of police power, and the order constitutes the equivalent of a taking without compensation.

N.C.G.S 113A-123(b) provides in pertinent part:

[T]he [superior] court shall determine whether [the Commission's final] order so restricts the use of [plaintiff's] property as to deprive him of the practical uses thereof, being not otherwise authorized by law, and is therefore an unreasonable exercise of the police power because the order constitutes the equivalent of taking without compensation. . . The burden of proof shall be on petitioner as to ownership and the burden of proof shall be on the Commission to prove that the order

is not an unreasonable exercise of the police power, as aforesaid. Either party shall be entitled to a jury trial on all issues of fact . . . The method provided in this subsection for the determination of the issue of whether such order constitutes a taking without compensation shall be exclusive and such issue shall not be determined in any other proceeding. . . .

The State answered plaintiff's complaint and moved for summary judgment on the grounds that plaintiff alleged no property interest in submerged tidal lands superior to the State's ownership of lands held in the public trust, plaintiff only owned a qualified right of access over tidal waters subject to public trust rights, CAMA dictated denial of the application because public trust rights were jeopardized by the proposed pier, plaintiff failed to obtain judicial review of the Commission's findings of fact in its denial of plaintiff's application and was bound by the findings, and the denial of plaintiff's application was neither an unreasonable exercise of police powers nor a deprivation of the practical uses of plaintiff's property. In support of its motion, the State offered the Commission's findings of fact in its order denying plaintiff's application. Those findings in pertinent part are as follows:

Findings of Fact

1. Description of Proposed Project:

d. The site of the proposed pier is located in the public trust, coastal wetlands, and estuarine waters areas of environmental concern, as designated by the Coastal Resources Commission pursuant N.C G.S. 113A-113. . . .

e. The proposed pier would have a footprint shadow of approximately 5,700 square feet (900' long by 6' wide with a T-head platform measuring 15' by 20'). Approximately 120 feet of salt marsh cord grass and 5,700 square feet of black needle rush would be shaded by the proposed pier. The project would involve approximately 5,580 square feet of surface water and bottom land, as well as submerged aquatic vegetation. . . .

f. The petitioner [plaintiff] applied for a 900 foot long pier so that it would extend to the area in front of his property where the water depth first reached 3½ to 4 feet mean low water. He intends to use the pier to dock his 23 foot

sail boat which has a fixed keel requiring minimum water depth of 3½ feet. . . .

2. Inconsistency of Proposed Pier with CAMA Guidelines

a. The proposed pier would be several times longer than the majority of piers authorized under CAMA which are generally under 200 feet in length. The proposed pier would be significantly longer than any pier previously permitted by CAMA on this shoreline. Piers in the vicinity of the proposed project extend 150-250 feet into Bogue Sound. . . .

b. Coastal Resources Commission guideline 15 NCAC 7H.0208(b)(e) requires that piers not extend beyond the established pier length along the same shore line for similar uses.

c. Expert testimony from the Assistant Director for DCM [Division of Coastal Management] established that "similar use" within the meaning of 15 NCAC 7H.0208(b)(6)(e) properly refers to the type of use of the adjacent property, i.e. single family residential, commercial, etc. "Similar use" does not refer to the size of the boat owned by the applicant or type of recreational activity desired by the applicant. . . .

d. The "same shoreline" for purposes of 15 NCAC 7H.0208(b)(6)(e) is established by the DCM staff on a case by case basis; in doing so, DCM considers shoreline features, such as geography, land use factors, and public uses of the shoreline and waters. . . .

. . . .

h. The only two piers of a length similar to the length of the pier proposed by the petitioner, shown to have been permitted by DCM[,] are distinguishable. First, they are in entirely different areas of the State, and thus are not located on the same shoreline or body of water. Second, the two piers permitted, Rogers Bay and Edgewater, extend less than 200 feet and less than 50 feet[,] respectively[,] over open water. The two structures are located primarily over *irregularly* flooded marsh, which is not entirely submerged even when flooded by the tide. The piers were allowed for pedestrian use, rather than to dock boats, and will protect the marsh grass from the heavy foot traffic

which would otherwise occur. The proposed pier would cover open, navigable water for the entire span of the pier at high tide and would shade shellfish beds rather than thick marsh grass. . . . [Emphasis in original.]

. . . .

j. All evidence presented in the record indicates that the Division of Coastal Management has applied the guidelines adopted by the CRC [Commission] for public trust AECs [areas of environmental concern] and for piers and docks consistent with the geographic circumstances. No CAMA major development permit has ever been issued which allows a pier to extend as much as 900 feet over open water at mean high tide.

k. The only expert testimony presented at the hearing established that the pier *as proposed* is inconsistent with CRC guidelines and may not lawfully be permitted under CAMA. [Emphasis in original.]

3. Bogue Sound and Public Uses:

b. Bogue Sound as a navigable body of water is "navigable" to the high water mark at mean high tide. . . .

c. Bogue Sound is a wide, relatively shallow, body of water regularly and commonly used by the public between the high water mark and the federally maintained channel. . . .

. . . .

g. The 600 foot area of shallow water in front of the property is not regularly exposed at low tide. The presence of eel grass in the area is inconsistent with regular exposure of the area at low tide. This evidence refuted any showing by the petitioner that tended to show the area was regularly exposed at low tide and not navigable in that area. . . .

h. At high tide, Bogue Sound is navigable to the shore by small boats of 16 to 20 feet in length. Bogue Sound is commonly navigated by smaller vessels within 500 to 900 feet of the shore at low tide, and to the high water mark at high tide. . . .

i. Bogue Sound, in the immediate area of the proposed pier, is commonly and heavily used by members of the public,

including other riparian owners, for net fishing, scalloping and clamming. . . .

j. Bogue Sound in the immediate area of the proposed pier is heavily used by local families and campers at a church camp for various recreational activities including small sailboats, skiffs, waterskiing, and fishing. . . .

k. The predominant land use on the shoreline of this area of Bogue Sound is single family residential. . . .

l. Several adjacent riparian [sic] landowners and public users from the immediate area of Bogue Sound objected to the proposed permit because of concern over the length of the proposed pier and detrimental impacts the pier would have on their uses of the waters of Bogue Sound for navigation, fishing, and recreation. . . .

m. The proposed pier would obstruct navigable waters for a distance of 900 feet at high tide. The proposed pier would extend such a distance into open waters that it represents a high potential for substantial impairment of traditional public uses and rights in this area of Bogue Sound. During periods of rough weather and periods of heavy traffic times on the Intercoastal Waterway by large boats, the near shore area is used for navigation by shallow draft boats to avoid the hazards to navigation caused by either rough weather or waves from large boats. The area is also used at night for safe navigation. . . .

n. Petitioner would have access to navigable waters with a pier of 400 feet in length. . . .

. . . .

p. There is no evidence in the record tending to show that petitioner holds any easement or grant to the submerged lands on which the proposed pier would be built that would give petitioner any property interest in those submerged lands. Petitioner has shown only that he has a riparian [sic] property owner's qualified right of access to navigable waters. . . .

q. The DCM did carefully and properly consider the petitioner's qualified right of riparian [sic] access and balanced this right against the traditional public uses of the waters of Bogue

Sound in making the decision to deny the permit application.

. . .

Countering the State's evidence, plaintiff offered his affidavit, setting forth one contention:

5. That by Motion for Summary Judgment, Respondent [State] has stated that the Coastal Resources Commission has determined that Petitioner could obtain a CAMA major development permit for the construction of a pier of up to 400 feet in length. That said statement is erroneous in that the Commission simply denied Petitioner's request for a permit, thus preventing Petitioner from having any pier at all.

———————————

The issues presented are whether I) the Judicial Review statute, N.C.G.S. § 113A-123(b), provides that jury trial is the exclusive method of determining the 'takings' issue, (A) precluding the trial court from ruling on the State's summary judgment motion or (B) considering the Commission's prior findings of fact in ruling on a question of law; and II) the Commission's findings established that the State was entitled to summary judgment.

I

[1] Plaintiff first contends that jury trial is the only method available by statute to protect his "landowner rights" from being 'taken' without compensation, and that the trial court's grant of summary judgment renders the statutory provision for jury trial "meaningless." We disagree with plaintiff's contentions for the reasons listed below.

A

The judicial review statute provides that "[e]ither party shall be entitled to a jury trial on all issues of *fact*. . ." N.C.G.S. § 113A-123(b) (emphasis added). Summary judgment is appropriate if only questions of law are raised, which do not require jury trial. *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). Thus, the device of summary judgment allows the court to "pierce the pleadings" to discern whether the parties' forecast of evidence reveals that more than questions of law are involved. *Id.* (citation omitted). Such a device is consistent with the statute and does not render the statute meaningless.

B

Plaintiff also contends that the jury trial provision became meaningless when the trial court allowed the State to introduce the Commission's factual determinations to support its motion for summary judgment. We disagree with plaintiff's contention for two reasons.

First, plaintiff's argument runs counter to established principles of law regarding administrative fact-finding. "The general rule is that an essential issue of fact which has been litigated and determined by an administrative decision is conclusive between the parties in a subsequent action." *Maines v. City of Greensboro*, 300 N.C. 126, 133, 265 S.E.2d 155, 160 (1980). The Commission made these findings after hearing expert testimony and any evidence plaintiff cared to present in support of his application. Plaintiff failed to object to or seek judicial review of the Commission's findings of fact pursuant to § 113A-123(a) and the findings are binding on plaintiff in this proceeding filed pursuant to § 113A-123(b). *Id.*

Second, plaintiff misperceives the issue at the heart of the judicial review statute. The statute provides that "[t]he method provided in this subsection [b] for the determination of the issue of whether [the Commission's] order constitutes a taking . . . shall be exclusive . . ." Plaintiff argues that if we give effect to the legal principle protecting administrative fact-finding, the Commission's previous final decision denying his application was an 'other proceeding' determinative of the 'taking' issue for which the statute provides the 'exclusive method.' As discussed above, the statute's 'method' contemplates both legal and factual determinations only of whether a 'taking' occurred. The Commission made its findings of fact solely in determination of whether to grant plaintiff's permit application. The Commission's findings certainly bear on the Commission's bases for denying the application, but they are not dispositive of the 'taking' issue. We note that the Commission also made Conclusions of Law in its order, including the conclusion that "[d]enial of petitioner's request for a 900 foot pier does not constitute a denial of opportunity for petitioner to exercise his common law right of riparian [sic] access, therefore, as a matter of law, there was no 'taking' of exercise of eminent domain by [the Commission]'s permit denial." The State admits, and the statute provides, that such conclusions of law by the Commission on the 'takings' issue have no weight.

Plaintiff has the right to use the statutory method for determining whether a 'taking' occurred, and within that method can seek jury trial on the 'takings' issue if he presents an *unresolved* issue of fact, but he is barred from relitigating the same issues of fact that the Commission resolved after hearing evidence concerning plaintiff's application. Plaintiff seeks to avoid the effects of his failure to request judicial review of the findings in the Commission's order as provided by section (a) of the statute, but the statute does not require the superior court to conduct pointless jury trials if no issue of fact supports plaintiff's claim.

## II

[2] Plaintiff next contends that the trial court improperly entered summary judgment for the State because he raised a material issue of fact that the Commission's denial of his permit is "an unreasonable exercise of police power," constituting a 'taking' without compensation.

Summary judgment is proper when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56; *Lowe*, at 369, 289 S.E.2d at 366. The movant has the burden of forecasting evidence showing that there are no material issues of fact and that it is entitled to judgment as a matter of law. *Id.* If the movant for summary judgment is not the party with the burden of proof of the claim, the movant's burden consists of (1) proving the lack of an essential element of the nonmovant's claim or (2) using discovery to show that the nonmovant cannot produce evidence to support an element of his claim. *Id.*, at 369-70, 289 S.E.2d at 366. If the movant fails to carry its burden, the nonmovant need not respond and summary judgment is improper, regardless of whether the nonmovant responds. *Id.* If, however, the movant carries its burden, the opposing party must respond with specific facts showing there is a genuine issue for trial or with an excuse for not doing so. Rule 56; *Id.*, at 370, 289 S.E.2d at 366. The opposing party cannot rely on the bare allegations of his complaint if the movant supports its motion by affidavit or otherwise. *Id.*

In the grant of summary judgment presented for our review, the State is movant and plaintiff is the opposing party. Therefore, the State has the burden of proving that plaintiff's claim lacks an essential element. To satisfy this burden, the State offered the Commission's Findings of Fact to support its motion. The record

shows no evidence plaintiff presented at the summary judgment hearing to dispute these findings, although he offered his affidavit, as shown above. Because plaintiff is not permitted to rely on his pleadings to rebut these facts and offered no excuse for not doing so, the only issue for our review is whether these undisputed facts entitle the State to judgment as a matter of law.

The law of the case is that damages resulting from a reasonable, or proper, exercise of police power are noncompensable. *Barnes v. Highway Comm.*, 257 N.C. 507, 514, 126 S.E.2d 732, 737-38 (1962) (citations omitted). The test for a reasonable exercise of a police power rule or regulation is known as the "ends-means" test. *Finch v. City of Durham*, 325 N.C. 352, 363, 384 S.E.2d 8, 14, *reh. denied*, 325 N.C. 714, 388 S.E.2d 452 (1989). In evaluating the regulation's effect, one first looks to the 'ends,' or goals, of the legislation to determine whether it is within the scope of the police power, and second, to the 'means,' to determine whether the interference with the owner's right to use his property as he deems appropriate is reasonable. *Id.* A failure in either 'ends' or 'means' results in a taking. *Id.*

Within the second prong of the 'takings' analysis, the 'reasonable means' prong, a statute works a 'taking' of property if it (1) deprives the owner of all practical use of the property and (2) renders the property of no reasonable value. *Id.*, at 364, 384 S.E.2d at 15, citing *Responsible Citizens v. City of Asheville*, 308 N.C. 255, 264, 302 S.E.2d 204 (1983). Mere restriction of 'practical uses' or diminishment of 'reasonable value' does not result in a 'taking.' *Id.*, at 364, 302 S.E.2d at 210, quoting *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 218, 258 S.E.2d 444, 451 (1979).

Plaintiff directs his contentions only to the first part of the two-part 'reasonable means' inquiry, whether the Commission's denial of his pier development permit deprived him of a 'all practical use' of the property. Specifically, he argues that because the tidal waters overlying the submerged land was not "usable" in navigation for mooring his boat, the Commission's denial was a 'taking' of the practical use of his property. We disagree.

As a littoral proprietor, plaintiff's rights derive from two distinct properties: 1) the principal estate of land extending to the shoreline of Bogue Sound, and 2) the appurtenant estate of submerged land in Bogue Sound benefiting the principal estate. *Capune v. Robbins*, 273 N.C. 581, 588, 160 S.E.2d 881, 886 (1968); *see also* Black's Law

Dictionary at 94 ("A thing is deemed . . . *appurtenant* to land when it is by right used for its benefit, as in the case of a . . . water-course . . ." (emphasis in original) ). However, the plaintiff's status as a littoral property owner does not guarantee him an absolute right to access over the tidal area of Bogue Sound because this right is "subject to such general rules and regulations as the Legislature, in the exercise of its powers, may prescribe for the protection of the public rights in rivers or navigable waters." *Capune*, at 588, 160 S.E.2d at 886. Thus, plaintiff's right in the appurtenant submerged land is subordinate to public trust protections, such as those evinced in N.C.G.S. § 113A-120(a)(5) (permits may be denied upon a finding that the "development will jeopardize the public rights and interest" in the waterways and lands "under or flowed by tidal waters or navigable waters, to which the public may have rights of access or public trust rights"). The Legislature's authority to protect public trust rights always is limited by plaintiff's right to retain some use or value of his property.

The issue is whether plaintiff is left with some practical use of his appurtenant interest. That the denial of the 900-foot pier permit restricts plaintiff's use of his interest in the submerged property to some degree and prohibits him from developing it as he may wish is immaterial. *See Finch*, at 371, 384 S.E.2d at 19. The Commission determined that the building of a 900-foot pier would "jeopardize the public rights and interest" and did not address, as it was not raised by the plaintiff, what length pier would be consistent with "public rights and interest." Not only does plaintiff have the right to petition the Commission for a pier of some length less than 900 feet, but the Commission's findings show that the shallow tidal water covering the submerged land has many recreational uses, including boating by "small boats of 16 and 20 feet in length, fishing, scalloping and clamming" and waterskiing. Furthermore, plaintiff has the current use of his principal estate of land and does not argue that there has been any taking of this property interest, apart from his appurtenant use in the submerged land. Accordingly, we determine that the State has met its burden of showing at the summary judgment hearing that plaintiff was not deprived of all practical uses of his property by the Commission's denial of his application to build a 900-foot pier.

Affirmed.

Judges BECTON and PHILLIPS concur.