433 S.E.2d 767 (1993)
Richard WALKER, et al., Petitioners,
v.
N.C. DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES, DIVISION OF COASTAL MANAGEMENT, COASTAL RESOURCES COMMISSION, Respondent, and
Oriental Harbor Development Company, Inc., Respondent-Intervenor.
ORIENTAL YACHT CLUB, Joseph H. Cox, et al., Petitioners,
v.
N.C. DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES, DIVISION OF COASTAL MANAGEMENT, COASTAL RESOURCES COMMISSION, Respondent, and
Oriental Harbor Development Company, Inc., Respondent-Intervenor.
No. 923SC348.
Court of Appeals of North Carolina.
September 7, 1993.
Manning, Fulton & Skinner, by Howard E. Manning and Edwin Pate Bailey, Raleigh, for petitioner appellants.
Atty. Gen. Lacy H. Thornburg, by Associate Atty. Gen. David G. Heeter, and Asst. Atty. Gen. Robin W. Smith, Raleigh, for respondent appellee.
Wheatly, Wheatly, Nobles & Weeks, P.A., by C.R. Wheatly, III, Beaufort, for respondent-intervenor appellee.
COZORT, Judge.
The dispositive issue presented by this appeal is whether the Department of Administration must grant an easement for the construction of a commercial marina by a private developer over public trust waters pursuant to N.C.Gen.Stat. § 146-12 (1991) and N.C.Admin.Code tit. 1, r. 6B.0605 (June 1987). We answer in the affirmative and hold the trial court erred in upholding an order of the Coastal Resources Commission issuing a development permit to respondent without the granting of an easement by the Department of Administration.
*768 On or about 25 September 1989, the Oriental Harbor Development Company, Inc. (Oriental Harbor) applied for a Coastal Area Management Act (CAMA) major development/dredge and fill permit to build a commercial marina on Smith Creek in Oriental, North Carolina. The marina site plan calls for approximately 148 boat slips on four floating docks eight feet wide and ranging from 375 to 560 feet long. The docks of the proposed marina would encircle approximately 5.9 acres of public trust waters. Approximately 9 acres of submerged lands would be excavated to construct the marina. The waters near the proposed site of Smith Creek are designated as a primary nursery area by the North Carolina Marine Fisheries Commission. The Commission has closed the waters in the vicinity of the site to shellfishing because of bacterial contamination. Prior to the closing, the area had been used for trawling shrimp and crab, netting fish, and anchoring and launching boats.
As part of the review process for issuance of the CAMA permit, the Department of Environment, Health and Natural Resources, Division of Coastal Management, Coastal Resources Commission (CRC) submitted Oriental Harbor's application to the Department of Administration (DOA) with a request for comments. On 6 November 1989, DOA responded in writing: "No Easement Required." The CRC issued permit No. 39-90 (the "permit") to Oriental Harbor on 9 March 1990. Petitioners objected to the issuance of the permit and initiated this action on 9 May 1990 by filing petitions for contested case hearings with the Office of Administrative Hearings, pursuant to N.C.Gen.Stat. § 150B-22, et seq. (1991).
The contested cases were assigned to Administrative Law Judge Fred G. Morrison, Jr., who consolidated the cases. A full evidentiary hearing was held on the matter from 28 August to 30 August 1990. On 11 January 1991, Judge Morrison filed a recommended decision, recommending:
That the CAMA Major Development/Dredge and Fill Permit No. 39-90 be revoked and that no CAMA Permit be issued to the Oriental Harbor Development Company, Inc. as requested in its application filed on September 25, 1989, on the grounds that the Permit allows the conversion of public trust lands and waters to private use, contrary to law, and no easement for use of public trust submerged lands has been granted by the Department of Administration and approved by the Governor and Council of State.
The CRC issued an order on 19 April 1991 rejecting the ALJ's recommended decision, finding that the permit was properly issued, and denying the petitioners' appeals in the contested cases. On 22 May 1991, petitioners filed a petition for judicial review in the Pamlico County Superior Court seeking review of the CRC's order. In their petition, the petitioners specifically raised the issue of "the DOA's non-action regarding an easement." The petition included a lengthy argument contending that "[t]he reply of the DOA to the CRC stating `No easement required' does not comply with the requirements of law and on its face is unlawful."
A hearing was held before Judge G.K. Butterfield in Pamlico County Superior Court. By order entered 20 December 1991, the trial court affirmed the CRC's order upholding issuance of the permit. Petitioners filed timely notice of appeal.
Petitioners advance twenty-two assignments of error on appeal, five of which address the legality of the issuance of the permit without requiring an easement from the DOA. We hold the CRC erred by issuing the permit in this case without the granting of an easement by the DOA.
It is undisputed that the site for the marina approved by the permit is situated in the public trust waters and submerged lands thereunder. Our Supreme Court noted long ago:
The State can no more abdicate its trust over property in which the whole people are interested, like navigable waters and soils under them, so as to leave them entirely under the use and control of private parties, ... than it can abdicate its police powers in the administration of *769 government and the preservation of the peace.
Land Co. v. Hotel, 132 N.C. 517, 527-28, 44 S.E. 39, 42 (1903). According to N.C.Gen. Stat. § 146-3, the State may not convey submerged lands in fee; it may grant easements therein. See N.C.Gen.Stat. § 146-3 (1991). The power to grant such easements is vested as follows:
The Department of Administration may grant, to adjoining riparian owners, easements in lands covered by navigable waters or by the waters of any lake owned by the State for such purposes and upon such conditions as it may deem proper, with the approval of the Governor and Council of State. The Department may, with the approval of the Governor and Council of State, revoke any such easement upon the violation by the grantee or his assigns of the conditions upon which it was granted.
N.C.Gen.Stat. § 146-12 (1991).
The statute does not impose an affirmative duty to grant an easement in every circumstance. However, the regulations promulgated thereunder clearly indicate that a project of the magnitude of the project below requires an easement prior to the issuance of a CAMA and dredge/fill permit. N.C.Admin.Code tit. 1, r. 6B.0605 provides:
(a) Riparian owners may construct piers or docks to gain access to navigable waters without an easement. Such structures may include a weatherproof shelter if the use of the shelter is in keeping with riparian access.
(b) Easements in lands covered by navigable waters are generally required for any structure built over navigable waters for purposes other than gaining riparian access. The Department of Administration may exempt from this provision structures deemed minor in their impact upon the public trust waters of the state. Examples of such exempt structures include boat ramps, duck blinds, small groins, and the like.
(c) Easements in lands covered by navigable waters will be granted upon application to the Department of Administration for such purposes and upon such conditions as the Department of Administration may deem proper and in the public interest, with approval of the Governor and the Council of State.
Our reading of the statute and the regulations leads us to the conclusion that the proposed development required an easement from the DOA. The project includes a 148slip marina covering 5.9 acres of public trust waters, requiring the hydraulic excavation of 9 acres of public trust lands. The respondent Department's own witness, Preston P. Pate, the Assistant Director of the Division of Coastal Management, acknowledged that the project authorized by the CRC permit does not fall within the "minor impact" exception outlined in subsection (b). We hold, as a matter of law, that an undertaking of this magnitude cannot be deemed to have only a "minor impact" on public trust waters. A large commercial marina cannot be compared to a duck blind or boat ramp. Because the marina therefore does not fall within an exemption to the easement requirement as outlined in N.C.Admin.Code tit. 1, r. 6B.0605(b), an easement is required for this project unless respondent has the right to construct a marina pursuant to a riparian right as permitted by subsection (a).
Respondent CRC has narrowly interpreted riparian rights to allow the limited construction of private docks and piers leading to navigable waters. Here, the docks are for commercial use and traverse public trust waters. With regard to littoral property rights, this Court recently stated in Weeks v. N. C. Dept. of Nat. Resources and Comm. Development, 97 N.C.App. 215, 388 S.E.2d 228, disc. review denied, 326 N.C. 601, 393 S.E.2d 890 (1990):
[T]he plaintiff's status as a littoral property owner does not guarantee him an absolute right to access over the tidal area ... because this right is "subject to such general rules and regulations as the Legislature, in the exercise of its powers, may prescribe for the protection of the public rights in rivers or navigable waters." Thus, plaintiff's right in the appurtenant *770 submerged land is subordinate to public trust protections....
Id. at 226, 388 S.E.2d at 234 (citation omitted). Furthermore, N.C.Admin.Code tit. 15A, r. 7H.0207(d) (April 1993) reads in part:
In the absence of overriding public benefit, any use which significantly interferes with the public right of navigation or other public trust rights which the public may be found to have in these [public trust] areas shall not be allowed.... [T]he building of piers, wharfs, or marinas are examples of uses that may be acceptable within public trust areas, provided that such uses will not be detrimental to the public trust rights and the biological and physical functions of the estuary.
Here, the marina site would "consist of four floating docks (ranging from 375 to 540 feet in length), a fuel dock and a breakwater." The waters of Smith Creek in the vicinity of the project site constitute public trust waters and estuarine waters which are currently areas of environmental concern. Evidence in the record indicates that the construction of the large floating docks would significantly affect the public's right to navigate the waters and would additionally have an impact on the biological and physical functions of the estuary. Accordingly, we hold that Oriental Harbor has no independent riparian or littoral property rights to construct the marina as planned.
We hold that the CRC erred in issuing permit No. 39-90 allowing construction of the marina without the prior granting of an easement by the Department of Administration, subject to approval by the Governor and the Council of State. Other issues raised by petitioner need not be considered here because those issues may not arise when the matter is reconsidered below. The trial court's order affirming CRC's approval of CAMA Major Development/State Dredge and Fill Permit 39-90 is reversed. Permit 39-90 is revoked and the matter is remanded for resubmission to the Department of Administration and any other proceedings as become necessary.
Reversed and remanded.
WYNN, J., concurs.
EAGLES, J., concurs in the result.