EASTERN APPRAISAL SERVICES, INC., PLAINTIFF v. THE STATE OF NORTH CAROLINA; JAMES E. LONG AS COMMISSIONER OF INSURANCE OF NORTH CAROLINA; AND THE NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, DEFENDANTS

No. 9410SC501

(Filed 16 May 1995)

**Constitutional Law § 103 (NCI4th)— files belonging to plaintiff—use by defendant to settle claims against insolvent insurer—no taking of personal property**

Where plaintiff was engaged in the business of appraising damages and attempting settlements of claims asserted by claimants and insureds against an insurance company which became insolvent, and in the course of performing this work developed and maintained files containing information and documentation relating to the claims, the actions of the Insurance Commissioner and the Guaranty Association in securing an order enjoining plaintiff from destroying the files and requiring plaintiff

EASTERN APPRAISAL SERVICES v. STATE OF NORTH CAROLINA

[118 N.C. App. 692 (1995)]

to turn the files over to the Commissioner did not amount to a taking of plaintiff's personal property which entitled plaintiff to compensation, since the Commissioner's seeking custody of the files was well within the usual scope of police power activity conducted to protect the general welfare; the interference with plaintiff's ownership interest in the claim files was reasonable; defendant Guaranty Association should have received from plaintiff the same treatment accorded the insolvent insurer; the Commissioner was entitled by statute to seek an injunction when necessary to prevent the withholding of all documents and records related to the business of the insurer; and the alleged diminution in value of the claim files was the direct result of the insurance company's insolvency rather than the order granting their custody to the Commissioner or their subsequent use by the Association to expedite processing of the remaining claims against the insurer.

**Am Jur 2d, Constitutional Law §§ 804 et seq.**

Appeal by plaintiff from order entered 25 February 1994 by Judge Henry V. Barnette, Jr., in Wake County Superior Court. Heard in the Court of Appeals 26 January 1995.

Plaintiff, prior to 5 March 1990, was engaged in the business of appraising damages and attempting settlements of claims asserted by claimants and insureds against Interstate Casualty Insurance Company ("Interstate"). In the course of performing this work, plaintiff developed and maintained files containing information and documentation relating to the claims.

On 5 March 1990, upon petition of James E. Long, North Carolina Commissioner of Insurance ("the Commissioner"), Interstate was determined by the Superior Court of Wake County to be insolvent and an order was entered placing the company in rehabilitation pursuant to N.C. Gen. Stat. Chapter 58, Article 30. On 9 April 1990, the court entered an order of liquidation, and the Commissioner was appointed as Liquidator of Interstate. Defendant North Carolina Insurance Guaranty Association ("the Association") moved to intervene in the proceeding and was made a party.

As a part of the process of liquidation and in order to facilitate the processing of claims made under policies issued by Interstate, the Association requested the Commissioner to obtain access to plaintiff's claim files. Plaintiff, through its president and sole shareholder,

William R. Shackleford, refused to permit voluntary access to the claim files without the payment of compensation, and threatened to destroy the files. Upon motion of the Commissioner, and following a hearing, the Superior Court of Wake County entered an order enjoining plaintiff from disposing of the plaintiff's open claim files, requiring plaintiff to produce the files to the Commissioner, and granting the Commissioner the exclusive right to custody and control of the documents for a period of 120 days, after which they were to be returned to plaintiff. The order was entered without prejudice to plaintiff's right "to assert a claim for just compensation or any other claim" in connection with the liquidation of Interstate. Plaintiff complied by delivering the claim files to defendants shortly thereafter. Employees of the Association looked through the files and made copies of pertinent documents, which were used by the Association in its processing of claims made under Interstate policies. The claim files were subsequently returned to plaintiff.

Contending that the actions of the Commissioner and the Association amounted to a condemnation of its personal property, plaintiff filed its complaint in this action seeking just compensation for the taking of its claim files. Plaintiff appeals the entry of summary judgment dismissing its claims against all defendants.

*Yeargan, Thompson & Mitchiner, by W. Hugh Thompson, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas D. Zweigart and Assistant Attorney General Sue Y. Little, for the State of North Carolina and defendant-appellee James E. Long as Commissioner of Insurance of North Carolina.*

*Moore & Van Allen, PLLC, by Joseph W. Eason and Christopher J. Blake, for defendant-appellee North Carolina Insurance Guaranty Association.*

MARTIN, John C., Judge.

Summary judgment is appropriate when no genuine issues of material fact exist and a party is entitled to judgment as a matter of law. N.C. Gen. Stat. 1A-1, Rule 56; *Long v. Vertical Technologies, Inc.,* 113 N.C. App. 598, 439 S.E.2d 797 (1994). There are no genuine issues of material fact present in the case before us. The sole question for our determination is whether defendants' actions constituted a taking

of plaintiff's property, entitling plaintiff to just compensation under the constitutions of the United States and North Carolina. We hold that no compensable taking occurred and affirm the judgment of the trial court.

Plaintiff argues that the 1,638 claim files in question are its personal property, created by plaintiff's employees at plaintiff's own expense of approximately $275 per file. Plaintiff claims that defendants obtained custody of and used the claim files, enabling defendant Association to avoid the time and expense of gathering for itself the information contained therein, and that the claim files had no further value after defendants' use.

The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides, *inter alia*, "private property [shall not] be taken for public use without just compensation." *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 41 L. Ed. 979 (1897). Similarly, the "law of the land" clause in Article I, § 19 of the North Carolina Constitution has been interpreted by our Supreme Court as providing a fundamental right to just compensation for the taking of private property for a public purpose. *Finch v. City of Durham*, 325 N.C. 352, 384 S.E.2d 8, *reh'g denied*, 325 N.C. 714, 388 S.E.2d 452 (1989).

A "taking" has been defined as "entering upon private property for more than a momentary period, and under warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof." *Stillings v. Winston-Salem*, 311 N.C. 689, 692, 319 S.E.2d 233, 236 (1984). If, however, the injury is determined to have arisen from the exercise of police power, the owner is not entitled to compensation because "it is either *damnum absque injuria*, or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure." *Orange County v. Heath*, 14 N.C. App. 44, 47, 187 S.E.2d 345, 347, *aff'd*, 282 N.C. 292, 192 S.E.2d 308 (1972).

The question of what constitutes a taking is often interwoven with the question of whether a particular act is an exercise of the police power or of the power of eminent domain. If the act is a proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable. The state must compen-

sate for property rights taken by eminent domain; damages result-ing from the exercise of police power are noncompensable.

*Department of Transportation v. Harkey*, 308 N.C. 148, 153, 301 S.E.2d 64, 67 (1983). (Citation omitted.) The question of whether a particular governmental action is a legitimate exercise of the police power is resolved through an "ends-means" analysis, in which the court must first look to the goal of the governmental action to deter-mine whether the ends sought are within the scope of the police power, and then must determine whether the "means", i.e., the extent to which the exercise of the power interferes with the owners prop-erty rights, is reasonable. *Responsible Citizens v. City of Asheville*, 308 N.C. 255, 302 S.E.2d 204 (1983). A failure in either step results in a compensable taking. *Weeks v. N.C. Dept. of Nat. Resources & Comm. Dev.*, 97 N.C. App. 215, 388 S.E.2d 228, *disc. review denied*, 326 N.C. 601, 393 S.E.2d 890 (1990). The cases applying the "ends-means" analysis have involved review of legislative action, primarily zoning regulation, however we believe the analysis to be equally applicable and helpful to a resolution of the issue before us here.

Protection of the public health, safety, morals and general welfare are the goals or "ends" usually recognized as being within the legiti-mate scope of police power activity "exercised without payment of compensation to the owner, even though the property is thereby ren-dered substantially worthless." *Orange County*, 14 N.C. App. at 48, 187 S.E.2d at 348. The "means", however, are not reasonable where 1) the owner has been deprived of all practical use of the property and 2) the property has been stripped of all reasonable value. *Weeks*, 97 N.C. App. at 225, 388 S.E.2d at 234. But, "mere restriction of 'practical uses' or diminishment of 'reasonable value' does not result in a 'tak-ing.' " *Id.* The United States Supreme Court has applied a similar analysis under the Fifth Amendment, and "has often upheld substan-tial regulation of an owner's use of his own property where deemed necessary to promote the public interest." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 73 L. Ed. 2d 868, 876 (1982); *see Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 57 L. Ed. 2d 631 (1978).

"It has long been established that the insurance business is charged with a public interest, and that its regulation is constitu-tional." *Hunt v. Reinsurance Facility*, 302 N.C. 274, 297, 275 S.E.2d 399, 410 (1981). In order to protect the public welfare, the General Assembly has granted the Commissioner of Insurance the power to

rehabilitate and liquidate insurance companies which are dangerously close to being, or have become, insolvent. N.C. Gen. Stat. § 58-30-1. The Association was established to provide a mechanism for the payment of covered claims for an insolvent insurer to avoid excessive delay and financial loss as a result of the insolvency. N.C. Gen. Stat. § 58-48-5.

As Interstate's liquidator, the Commissioner is charged with prosecuting and defending appropriate claims against the insolvent insurance company, as well as abandoning the prosecution of claims deemed unprofitable to pursue. N.C. Gen. Stat. § 58-30-120(12). Similarly, the Association is charged with a duty to

> (4) Investigate claims brought against the Association and adjust, compromise, settle, and pay covered claims to the extent of the Association's obligation and deny all other claims and may review settlements, releases and judgments to which the insolvent insurer or its insureds were parties to determine the extent to which such settlements, releases and judgments may be properly contested.

N.C. Gen. Stat. § 58-48-35(a)(4). In order to determine which claims to pursue and which to abandon it was necessary for the Commissioner and the Association to review plaintiff's claim files, just as the insolvent insurer would have done in making its determinations regarding the settlement and prosecution of claims. Thus, we conclude that the Commissioner's seeking custody of the files was well within the usual scope of police power activity conducted to protect the general welfare.

The interference with plaintiff's ownership interest in the claim files was also reasonable. "The reasonableness of an exercise of the police power is to be determined by the court and is based on human judgment, natural justice and common sense in view of all the facts and circumstances." *Butler v. Peters, Comr. of Motor Vehicles*, 52 N.C. App. 357, 359-60, 278 S.E.2d 283, 285, *appeal dismissed*, 303 N.C. 543, 281 S.E.2d 391 (1981). Defendants' possession and use of the claim files was temporary, at the conclusion of which all of the file materials were returned to plaintiff. Upon Interstate's insolvency, the Association became liable to Interstate's covered claimants, and following satisfaction of the claim, the claimant's rights under the insolvent insurance company's policy are assigned to the Association. N.C. Gen. Stat. § 58-48-50. In essence, the Association is substituted for the insolvent insurer vis-à-vis its obligations to claimants and insureds.

As such, the Association should have received from plaintiff the same treatment accorded Interstate. Affidavits of two of plaintiff's former employees admit that Interstate was routinely given access to the claim files, which contained information both provided by Interstate and generated by plaintiff's efforts. The Commissioner as liquidator of Interstate is entitled by statute to seek an injunction when necessary to prevent the withholding of all documents and records related to the business of the insurer, N.C. Gen. Stat. § 58-30-20(10), and as an agent of Interstate, plaintiff is required by statute to cooperate with the Commissioner and make available "any books, accounts, documents, or other records or information or property of or pertaining to the insurer and in his possession, custody, or control." N.C. Gen. Stat. § 58-30-25(a).

Finally, we note that after the order of liquidation was entered as to Interstate, the claim files had essentially no value except as proof of the validity of any claim for its accounts receivable which plaintiff may have elected to file as a general creditor of Interstate pursuant to N.C. Gen. Stat. § 58-30-190. The diminution in the value of the claim files was the direct result of Interstate's insolvency, rather than the order granting their custody to the Commissioner or their subsequent use by the Association to expedite processing of the remaining claims against Interstate.

The trial court's order granting summary judgment in favor of defendants is affirmed.

Affirmed.

Judges COZORT and JOHN concur.