RUTH A. KING, BY AND THROUGH HER ATTORNEY-IN-FACT, WALTER A. WARREN, PLAINTIFF v. STATE OF NORTH CAROLINA, NORTH CAROLINA DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES, DIVISION OF COASTAL MANAGEMENT AND DIVISION OF ENVIRONMENTAL MANAGEMENT, DEFENDANTS

No. COA96-310

(Filed 18 February 1997)

**1. Environmental Protection, Regulation, and Conservation § 45 (NCI4th)— fill permits—Topsail Sound—findings of fact from prior proceeding—binding**

The trial court did not err in an action arising from the denial of permits to place fill material on a peninsula in Topsail Sound by treating facts found in a judicial review proceeding as binding for purposes of this action where the Environmental Manage-

KING v. STATE OF NORTH CAROLINA

[125 N.C. App. 379 (1997)]

ment Commission's (EMC's) findings of fact were upheld in a prior appeal.

**Am Jur 2d, Administrative Law § 537.**

2. **Environmental Protection, Regulation, and Conservation § 45 (NCI4th)— fill permits denied—takings claim—practical alternatives to proposed construction plan**

In an action under N.C.G.S. § 113A-123(b) arising from the denial of permits to place fill material on a peninsula in Topsail Sound, the State met its burden of establishing that its denial of plaintiff's Section 401 certification was not an unreasonable exercise of police power by coming forward with practical alternatives to plaintiff's proposed plan.

**Am Jur 2d, Constitutional Law §§ 365, 397-401.**

3. **Environmental Protection, Regulation, and Conservation § 45 (NCI4th); Constitutional Law § 103 (NCI4th)— denial of fill permits—takings claim—practical alternatives to construction plan**

The State met its burden of proving that plaintiff's takings claim, which arose from the denial of permits to place fill material on a peninsula in Topsail Sound, lacks an essential element for purposes of summary judgment by establishing that practical alternatives exist to plaintiff's proposed construction plan. Plaintiff's evidence only establishes that the property cannot be put to its highest and best use, but the test is whether plaintiff has been deprived of all practical use and reasonable value of the property, not what particular development of the property will be most economically beneficial to plaintiff. If plaintiff submits a plan to the State for the development of the property that is consistent with the alternatives enunciated by the State and the State fails to approve such plan, then plaintiff may avail herself of the remedies available under N.C.G.S. § 113A-123(b).

**Am Jur 2d, Constitutional Law § 408.**

**Local use zoning of wetlands or flood plain as taking without compensation. 19 ALR4th 756.**

**Supreme Court's views as to what constitutes "taking," within meaning of Fifth Amendment's prohibition against taking of private property for public use without just compensation. 89 L. Ed. 2d 977.**

Appeal by plaintiff from order entered 24 August 1995 by Judge
James D. Llewellyn in Pender County Superior Court. Heard in the
Court of Appeals 21 November 1996.

*Wheatly, Wheatly, Nobles & Weeks, P.A., by C. R. Wheatly, III,
for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney
General Robin W. Smith, for the State.*

WALKER, Judge.

On 3 March 1989, plaintiff, Ruth A. King, by and through her at-
torney-in-fact, submitted an application for a major development per-
mit under the Coastal Area Management Act (CAMA), N.C. Gen. Stat.
§§ 113A-100 to -134.3 (1994), to place between 10,000 and 20,000
cubic yards of fill material on her property, which consists of an
eight-acre peninsula in Topsail Sound. Plaintiff planned to build a
marl/rock road down the center of the property and a fifty lot subdi-
vision along this road. Subsequently, plaintiff modified the permit
application pursuant to a consent agreement with the Division of
Coastal Management (DCM) to eliminate the proposed subdivision.
Thereafter, the application covered only the filling of the road bed
and construction of a bulkhead around the perimeter of the penin-
sula. Representatives of the United States Army Corps of Engineers
(COE) later determined that the interior two acres of the peninsula
contained freshwater wetlands subject to flooding by storm tides and
surface water runoff. Since plaintiff intended to place fill in the wet-
lands, she was required to obtain a permit from COE pursuant to
Section 404 of the Clean Water Act, 33 U.S.C.A. § 1344 (1986).
According to Section 401 of the Clean Water Act, 33 U.S.C.A. § 1341
(1986), applicants for Section 404 permits must provide COE with
certification that the discharge of fill material is consistent with state
water quality standards. The Division of Environmental Management
(DEM), part of the Department of Environment, Health and Natural
Resources, reviews Section 401 certification requests, and the
Environmental Management Commission (EMC) makes the final
decision to grant or deny the certification. On 14 September 1990,
DEM denied plaintiff's request for Section 401 certification, and on 3
October 1990, DCM denied plaintiff's application for a CAMA permit.
Plaintiff appealed the denial of the CAMA permit application to the
Coastal Resources Commission (CRC) and also appealed the denial
of the Section 401 certification request to EMC. On 10 October 1991,

CRC ordered DCM to issue a CAMA permit to plaintiff, but directed DCM to condition the permit on whether plaintiff obtained Section 401 certification prior to the commencement of construction. DCM issued the permit to plaintiff on 20 November 1991.

On 28 October 1991, EMC denied plaintiff's request for Section 401 certification, finding that the proposed wetland fill would degrade surrounding shellfish waters. EMC also found that there were less environmentally damaging alternatives for the construction of the road other than plaintiff's proposed plan. Plaintiff then sought judicial review of both EMC and CRC's orders.

On judicial review, the trial court reversed EMC's denial of Section 401 certification, but affirmed CRC's decision to condition the CAMA permit on whether plaintiff acquired Section 401 certification prior to the commencement of construction. EMC appealed the trial court's order to this Court, and in *King v. N.C. Environmental Mgmt. Comm.*, 112 N.C. App. 813, 436 S.E.2d 865 (1993), we reversed the order of the trial court and upheld EMC's findings of fact in support of its decision to deny plaintiff's Section 401 certification.

On 5 February 1992, plaintiff filed the present action pursuant to N.C. Gen. Stat. § 113A-123(b), alleging that the decisions of EMC and CRC (collectively, the State) limited the use of her property so as to deny her all reasonable use of the property, thereby constituting a taking without compensation. The State subsequently moved for summary judgment. In response to the State's motion for summary judgment, plaintiff presented the affidavit of James L. Powell, a registered land surveyor, who stated that the only practical way to subdivide the property was to build the road down the center of the property. Otherwise, houses would have to be constructed on "stilts" or bridges would have to be built from one side of the peninsula to the other. Plaintiff also presented the affidavit of Collice C. Moore, a licensed real estate appraiser, who opined that the property would have a fair market value of $1,360,000.00 if it were developed according to plaintiff's proposed plan, but otherwise the property would have a fair market value of $3,700.00. Moore's estimate of value was based on the approach that the property could only be developed with the road and utilities being constructed down the center of the property. The trial court granted the State's motion for summary judgment on 24 August 1995.

[1] On appeal, plaintiff first argues that the trial court erred by granting summary judgment in that the trial court erroneously treated the

findings of fact in the judicial review proceeding as established for purposes of this action. In *Weeks v. N.C. Dept. of Nat. Resources and Comm. Development*, 97 N.C. App. 215, 223, 388 S.E.2d 228, 232, *cert. denied*, 326 N.C. 601, 393 S.E.2d 890 (1990), this Court stated that "[t]he general rule is that an essential issue of fact which has been litigated and determined by an administrative decision is conclusive between the parties in a subsequent action." In *Weeks*, CRC denied plaintiff's application for a CAMA permit to build a 900-foot long pier in the tidal water adjacent to his property. *Id.* at 216-17, 388 S.E.2d at 229. Without seeking judicial review of CRC's findings, plaintiff filed a complaint pursuant to N.C. Gen. Stat. § 113A-123(b) alleging that CRC's actions were an unreasonable exercise of police power and amounted to an unconstitutional taking of his property. *Id.* at 217, 388 S.E.2d at 229. CRC moved for summary judgment based on its factual findings in plaintiff's administrative appeal. *Id.* at 218, 388 S.E.2d at 230. This Court held that because plaintiff did not object to or seek judicial review of CRC's findings of fact, he was "barred from relitigating the same issues of fact that the Commission resolved after hearing evidence concerning [his] application." *Id.* at 224, 388 S.E.2d at 233.

In the present case, plaintiff sought judicial review of EMC's findings of fact, which were upheld in the prior appeal. Since this Court upheld EMC's findings, *see King*, 112 N.C. App. 813, 436 S.E.2d 865 (1993), they are now binding on plaintiff's taking claim. Thus, the trial court did not err by treating the facts found in the judicial review proceeding as binding for purposes of this action.

[2] N.C. Gen. Stat. § 113A-123(b) states that any person affected by a final order or decision of CRC may petition the superior court, whose duty is to

> determine whether such order so restricts the use of his property as to deprive him of the practical uses thereof . . . and is therefore an unreasonable exercise of the police power because the order constitutes the equivalent of taking without compensation. The burden of proof shall be on petitioner as to ownership and the burden of proof shall be on the Commission to prove that the order is not an unreasonable exercise of the police power, as aforesaid.

Plaintiff next contends that in order to establish that CRC's decision is not an unreasonable exercise of police power, the State must first

show that practical alternatives exist to plaintiff's proposed plan that prevent plaintiff's property from being rendered valueless. Therefore, plaintiff argues that the State has failed to come forward with evidence that practical alternatives exist to her proposed plan as required.

EMC made the following findings of fact which were upheld on judicial review, and which the trial court accepted as binding on the present action:

> f. In a letter addressed to [Plaintiff's] attorney in fact . . . DEM employee A. Preston Howard, Jr. requested that Petitioner provide information on alternatives to filling the wetlands on [Plaintiff's] property . . . .

> g. [Plaintiff] did not respond to Preston Howard's request for alternative proposals in his letter of April 21, 1989. [Plaintiff] has made no efforts to show that there are no practical alternatives, believing instead that the burden of developing practical alternatives rests with [DEM].

> h. There may be one or more practicable alternatives [for development of the property], including rerouting the proposed road from the center of the property to the south side or elevating some of the proposed houses over the wetland on pilings. [Plaintiff] has conducted no investigation and has made no showing that these alternatives are not practicable.

The State contends that because EMC's decision has no effect on three-quarters of plaintiff's property, and because other alternatives for road construction and development of the property are available, an essential element of plaintiff's takings claim, deprivation of all practical use and reasonable value, is eliminated.

Plaintiff claims that the evidence, by way of affidavits she presented, demonstrate that there are no practical alternatives to her proposed plan. However, this evidence only establishes that since plaintiff will be unable to subdivide the full eight-acre peninsula and locate the road and utilities in the center of the property, the property cannot be put to its highest and best use. The evidence presented by the State demonstrates that six acres of the peninsula can be subdivided without restriction, and that even the wetlands themselves can be developed provided that houses are built on pilings. Because the State came forward with practical alternatives to plaintiff's proposed plan in the review proceedings before EMC, the State met its burden

for purposes of establishing that its denial of plaintiff's Section 401 certification was not an unreasonable exercise of police power in violation of N.C. Gen. Stat. § 113A-123(b).

**[3]** The State also met its burden of proving that plaintiff's claim lacks an essential element for purposes of summary judgment. Under N.C.R. Civ. P. 56(c), summary judgment is appropriate when there are no genuine issues of material fact and any party is entitled to judgment as a matter of law. The party moving for summary judgment may meet its burden of establishing the lack of a triable issue by proving an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party will not be able to come forward with evidence to support an essential element of its claim. *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). If the moving party meets its burden, the opposing party must show that a genuine issue of fact exists or must provide an excuse for not doing so. *Id.*

By establishing that practical alternatives exist to plaintiff's proposed plan, the State has shown that an essential element of plaintiff's takings claim, the deprivation of all practical use and reasonable value of the property, does not exist. Thus, the trial court properly granted summary judgment in favor of the State.

The rule set forth by the United States Supreme Court in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 120 L. Ed. 2d 798 (1992), also compels the conclusion that there has been no taking of plaintiff's property. In *Lucas*, the Court established two categories of regulatory action that require a finding of a compensable taking: regulations that compel physical invasions of property and regulations that deny an owner all economically beneficial or productive use of property. *Id.* at 1015, 120 L. Ed. 2d at 812-13.

Our case does not fall within the first category of regulatory takings, since there has been no physical invasion of plaintiff's property, but does fit into the second category. The standard for this second category, whether there has been a deprivation of all economically beneficial or productive use of the property, is similar to the standard set forth by our Supreme Court in *Finch v. City of Durham*, 325 N.C. 352, 384 S.E.2d 8, *reh'g denied*, 325 N.C. 714, 388 S.E.2d 452 (1989). In *Finch*, the Court stated that "the test for determining whether a taking has occurred . . . is whether the property . . . has a practical use and a reasonable value." *Id.* at 364, 384 S.E.2d at 15.

SODERLUND v. N.C. SCHOOL OF THE ARTS

[125 N.C. App. 386 (1997)]

As with any property owner who wishes to develop property, plaintiff would like to maximize her profits by developing the property to the fullest extent possible. However, the test is not what particular development of the property will be most economically beneficial to plaintiff, but instead, whether plaintiff has been deprived of all practical use and reasonable value of the property. By establishing that practical alternatives exist to plaintiff's proposed construction plan, the State has met its burden of proving that plaintiff has not been deprived of all practical use and reasonable value of her property. If, however, plaintiff submits a plan to the State for the development of the property that is consistent with the alternatives enunciated by the State, and if the State fails to approve such plan, then plaintiff may avail herself of the remedies available under N.C. Gen. Stat. § 113A-123(b).

Affirmed.

Judges LEWIS and SMITH concur.